<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| **STEPHEN GIERCYK and AJAY DAS,** on behalf of themselves and all others similarly situated, | : : : : | Civil Action No. 13-6272 |
| *Plaintiffs*, | : : : | |
| v. | : : | |
| **NATIONAL UNION FIRE INS. CO. OF PITTSBURGH, PA, et al,** | : : : : | OPINION |
| *Defendants*. | : : | |

**ARLEO, UNITED STATES DISTRICT JUDGE**

This case concerns whether an insurer's failure to comply with certain New Jersey insurance laws governing the sale of policies renders the policies void and thus constitutes violations of the New Jersey Consumer Fraud Act and common law. An examination of the statutory scheme and New Jersey case law makes clear that such policies are enforceable and not void despite the insurer's noncompliance. Consequently, policyholders who have neither made claims nor had claims denied lack standing to assert such violations. As such, those claims are dismissed. Plaintiffs are given leave to replead the remaining claims consistent with Rule 9's heightened pleading requirement.[1]

---

[1] On November 24, 2015, the parties appeared before the Court for oral argument on Defendants Alliant Insurance Houston, LLC, Alliant Insurance Services, Inc., Alliant Services Houston, Inc. (collectively, "Alliant"), American International Group, Inc. ("AIG"), National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), Catamaran Health Solutions, LLC ("Catamaran"), and Virginia Surety Company, Inc. ("Virginia") (collectively, "Defendants") Motions to Dismiss. Dkt. Nos. 176-179. This opinion supplements the Court's ruling on the record. The Court also notes that some of the Defendants seek dismissal for separate, individual

1

I.     **BACKGROUND**

Plaintiffs Stephen Giercyk and Ajay Das bring this Complaint on behalf of themselves and all others similarly situated, alleging wrongful conduct on behalf of (1) Catamaran, f/k/a/ Catalyst, f/k/a HealthExtras, Inc., (2) HealthExtras, LLC, (3) Alliant, (4) Virginia Surety, (5) AIG, and (6) National Union.  Third Amend. Compl. ("TAC"), Dkt. No. 144, ¶ 26.

Beginning in approximately 1997, Catamaran, f/k/a Catalyst, f/k/a/ HeathExtras Inc. ("Catamaran") created a Disability Benefit Scheme (the "HealthExtras Scheme" or "HealthExtras Policy"), and contracted with Christopher Reeve to endorse it.  Id. ¶ 43. The alleged HealthExtras Scheme included a One Million Dollar ($1,000,000) Accidental Permanent and Total Disability Benefit insurance coverage and a Two Thousand Five Hundred ($250,000) Out of Area Emergency Accident and Sickness Medical Expense Benefit.  Id.  The insurance coverage was underwritten by several insurance companies.  Id. ¶ 44.   The HealthExtras Accidental Permanent Disability Policy was originally underwritten by Federal Insurance Company.  Id. ¶ 47(i).  On January 1, 2005, the underwriter was changed to Defendant National Union.  Id. ¶¶ 47(i), 71.  The Emergency Accident and Sickness Medical Expense Benefit was underwritten by Defendant Virginia Surety Company, Inc. from the date of the Plaintiffs' enrollment.  Id. ¶ 72.  Catamaran, National Union and AIG allegedly entered into agreements to develop and market the scheme.  Id. at 117.  Alliant and Virginia Surety allegedly allowed their names to be used to create the false illusion of a group policy.  Id.

Plaintiffs allege that the HealthExtras Scheme was conceived to defraud consumers and gain an unfair and illegal advantage in the disability insurance market by avoiding state insurance regulations and selling virtually worthless group disability insurance to individuals

---

reasons.  However, because the Court finds that Plaintiffs lack standing under the NJCFA, the Court does not reach these additional arguments.

rather than a qualified group. Id. ¶ 45. Defendants developed a Trust called "AIG Group Insurance Trust, for the Account of HealthExtras," which, plaintiffs assert, is a "fictitious, illegal and sham Trust." Id. ¶¶ 82, 103. Plaintiffs contend that Defendants formed the group in order to circumvent regulatory supervision. Id. ¶ 96. Catamaran directly marketed the policy to individual consumers and once they enrolled placed that consumer in this allegedly fictitious group to conceal the scheme. Id. ¶ 46(d). Plaintiffs allege that HealthExtras, Inc. entered into agreements with banks that provided access to the banks' credit card customers to market the HealthExtras Scheme throughout the United States. Id. ¶ 47(a). The credit card companies allowed Catamaran to include a marketing flyer in the cardholder's monthly credit card statements. Id. ¶ 47. Once the individual cardholder sent the application to Catamaran, he or she was designated as a "member" of a fictitious group and placed into a "Trust" created by Catamaran and other Defendants. Id. at 47(g).

After receiving the application, Catamaran debited the individual's credit card on a monthly or yearly basis for the insurance premium. Id. Plaintiffs allege that the underwriters Defendants either misrepresented to the state insurance regulators that the policy was issued to a valid group or simply failed to apply for approval of the group policy. Id. ¶ 47. The New Jersey Department of Insurance has not approved the HealthExtras policy for sale to any eligible blanket groups in New Jersey, and that the policy was thus illegal. Id. ¶¶ 83, 86. Plaintiffs claim that this illegal scheme allowed Catamaran to market and sell group disability policies directly to individuals and collect premiums from them rather than from a real group. Id. ¶ 48.

Plaintiffs also alleged that the Health Fraud Scheme is fraudulent because the marketing materials represented that the plan provided affordable coverage and such coverage was "illusory," as evidenced by others who suffered catastrophic injury and were denied benefits. Id.

3

at 76-77. Plaintiff claims that the policy has extremely harsh, restrictive confusing exclusions and contradiction terms and definitions which renders the policy worthless. Id. At 105.

During the summer of 1999, Plaintiffs Giercyk and Das received marketing materials from HealthExtras, Inc. in mailings from their credit card issuers, offering enrollment in the HealthExtras Scheme. Id. ¶¶ 53-54. In 1999 or 2000, Giercyk received a letter from HealthExtras, Inc. explaining the plan and payout options. Id. ¶ 56. Plaintiffs Giercyk and Das both enrolled in the benefits program and agreed to pay premiums which appeared as charges on credit card statements. Id. ¶¶ 60-61. Plaintiffs allege that over the course of their enrollment, their premiums were unilaterally increased by Defendants. Id. ¶¶ 66-68.

It is not alleged, however, that either Giercyk, Das, or any of the class members, ever made a claim for coverage or that a claim was ever denied.

## II. LEGAL STANDARD

When considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the plaintiff. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). Dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Id. The facts alleged, however, must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

As to Plaintiffs' claims that sound in fraud, Rule 9(b) imposes a heightened pleading requirement concerning allegations of fraud over and above that required by Rule 8(a). In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig., No. 08-939, 2009 WL 2940081, at *8 (D.N.J. Sept. 11, 2009) (citing Maniscalco v. Brother Int'l Corp. (USA), 627 F. Supp. 2d 494, 500 (D.N.J. 2009)). Rule 9(b) states "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Plaintiffs may satisfy this requirement by pleading the "'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" Lum v. Bank of Am., 361 F.3d 217, 224 (3d Cir. 2004) (quoting Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir.1984)). "Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation." Id.

Pleadings containing collectivized allegations against "defendant" do not suffice. Naporano Iron & Metal Co. v. Am. Crane Corp., 79 F. Supp. 2d 494, 511 (D.N.J. 1999). "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants'." Eli Lilly & Co. v. Roussel Corp., 23 F. Supp. 2d 460, 492 (D.N.J. 1998) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)). A plaintiff must plead fraud with particularity with respect to each defendant, thereby informing each defendant of the nature of its alleged participation in the fraud. Naporano Iron & Metal Co., 79 F. Supp. 2d at 511.

### III. ANALYSIS

#### A. Count One: Violation of New Jersey Consumer Fraud Act as to all Defendants

It appears from the TAC that Plaintiffs' New Jersey Consumer Fraud Act ("NJCFA") claims are based on two theories. First, the Policy did not comply with certain New Jersey

5

insurance laws and, therefore, was void. Second, Defendants fraudulently misrepresented the coverage that Plaintiffs would receive under the Policy. Neither theory states a claim.

The NJCFA was enacted to protect consumers against acts of deception and fraud, including those committed in good faith. Ji v. Palmer, 333 N.J. Super. 451, 461 (N.J. App. Div. 2007); see also N.J. Stat. Ann. § 56:8–2. To state a valid claim under the NJCFA, a plaintiff must allege each of the following elements: (1) defendant's unlawful practice, (2) plaintiff's ascertainable loss, and (3) a causal relationship between the two. Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., 192 N.J. 372, 389 (2007) (internal quotation marks omitted). The NJCFA defines "unlawful practice" as:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . .

N.J. Stat. Ann. § 56:8-2. "An ascertainable loss is a loss that is quantifiable or measurable; it is not hypothetical or illusory." Zodda v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., No. 13-7738, 2015 WL 926221, at *9 (D.N.J. Mar. 4, 2015) (quoting Lee v. Carter–Reed Co., 203 N.J. 496, 4 A.3d 561, 576 (2010)).

### 1. Enforceability of the HealthExtras Policy

Under their first theory, Plaintiffs allege that "Defendants' conduct violates New Jersey statutes and regulations because, inter alia, the HealthExtras policy was sold as a blanket policy to a group of persons that do not constitute a lawful blanket group." TAC ¶ 170. The HealthExtras Policy therefore "had no value to the actual persons who were and are paying for the premiums." Id. ¶ 173(c).

6

Defendants argue that Plaintiffs do not have standing to assert this claim. Defendants contend that Plaintiffs have not suffered a cognizable injury in fact because (1) the policies are enforceable and any violation of the blanket insurance requirements under N.J. Stat. Ann. § 17B:27-32 does not render them void; and (2) Plaintiffs have not filed a claim under this policy for which coverage was inappropriately denied.[2] The Court agrees.

"The question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." In re Google Inc. Cookie Placement Consumer Privacy Litig., No. 13-4300, 2015 WL 6875340, at *4 (3d Cir. Nov. 10, 2015) (internal citations omitted). A core requirement of standing is that the plaintiff has suffered an injury in fact. Id. In assessing injury in fact, the Court must look for an "invasion . . . which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." Id. (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)).

Other federal district courts have addressed challenges to this same insurance scheme and have addressed it under a standing analysis. See Petruzzo v. HealthExtras, Inc., No. 12-113, Dkt. 181 (E.D.N.C. May 22, 2015); Williams v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 94 F. Supp. 3d 719 (D.S.C. 2015); Waiserman v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, No. 14-667, Dkt. No. 84 (C.D. Cal. Oct. 24, 2014); Williams v. Nat'l Union Fire Ins., No. 14-309, 2014 WL 4386463 (N.D. Ga. Sept 4, 2014). As those courts did, this Court looks to the underlying

---

[2] While Defendants assert this argument under Rule 12(b)(6), standing challenges are addressed under Rule 12(b)(1). This does not change the Court's analysis. "If [the] plaintiffs do not possess Article III standing, District Court . . . lack[s] subject matter jurisdiction to address the merits of [the] plaintiffs' case." Storino v. Borough of Point Pleasant Beach, 322 F.3d 293, 296 (3d Cir. 2003) (internal quotation marks omitted). A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may either "attack the complaint on its face" or "attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings." Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). Where, as here, the Court evaluates the merits of a facial attack, "the court must consider the allegations of the complaint as true." Id.

state law—here, New Jersey law—to determine whether the HealthExtras Policy is void, and therefore whether the Plaintiffs have standing.

New Jersey's statutory insurance laws do not address whether violations of the blanket provisions render the policies void. Section 17B:27-32 defines blanket insurance as a policy or contract issued to one of seven groups or associations of people. See N.J. Stat. Ann. § 17B:27-32(a)(1)-(7). Section 17B:27C-3 defines "associations" as "a group of 100 or more persons organized and maintained in good faith for purposes other than that of obtaining insurance, in active existence for more than one year, [and] having a constitution and bylaws" that meet certain requirements. N.J. Stat. Ann. § 17B:27C-3. These provisions explain the requirements for a blanket insurance policy, but they do not mandate that the failure to follow these provisions would render nonconforming policies void.

The Supreme Court of New Jersey, on the other hand, has addressed the issue. In Restaurant Enter. v. Sussex Mut. Ins. Co., the court held that violations of insurance laws do not automatically render a policy void. 52 N.J. 73, 77-78 (1968). There, the parties issued an insurance binder for a longer duration than was statutorily permissible. Id. at 77. The court found that the policy was not void because the statute was "an industry regulation directed to the insurer." Id. at 77-78. The statute required the insurer to include provisions in the policy that are more descriptive than binder terms. Id. at 78. Therefore, the court held, that even if the insurer created a policy that was prohibited under the statute, "the prohibition is not meant to void the action as regards an insurance purchaser." Id.

The same is true here. The blanket insurance statute is directed at the insurer. It instructs the insurer to issue policies only to certain groups or associations rather than individuals. See N.J. Stat. Ann. § 17B:27-32(a). Conversely, it has no bearing on an individual insurance

8

purchaser's rights under the blanket policy. Thus, while an insurer is prohibited from issuing a nonconforming policy, that prohibition is not meant to void the insured's policy once issued.

Holding the policy void in such circumstances would be "patently unfair." Restaurant Enters., 52 N.J. at 77. As the Supreme Court of New Jersey explained, "a prospective insured, such as plaintiff, might well believe himself to be fully covered and feel it is unnecessary to attempt to secure either the actual policy or insurance from another company only to find himself without the insurance he was led to believe he possessed." Id. Such a result visits "a penalty upon the insured who has no reason actually to know of the statutory limitation while the insurer who has a duty to know thereof, receives an unjust benefit." Id.

That is not to say that insurance companies can violate insurance laws with impunity. Appropriate mechanisms exist to enforce this statute. The insurance companies would be accountable to the New Jersey Department of Banking and Insurance. That agency, which is "charged with the execution of all laws relative to insurance," N.J. Stat. Ann. § 17:1-1, has the power to impose sanctions upon the insurer's noncompliance with the statute. See Restaurant Enters., 52 N.J. at 78; see also N.J. Stat. Ann § 17b:17-14 (listing penalties for failure to comply with provisions of the Life and Health Insurance Code).

Given the policy's enforceability, Plaintiffs lack standing because they have not alleged a concrete injury. First, if Plaintiffs filed a valid claim, Defendants would be obligated to pay them, as required by Restaurant Enter. Second, Plaintiffs have not filed any claims. Therefore, any suggestion that Defendants would not honor Plaintiffs' claims is mere speculation, and not a concrete harm. See Maio v. Aetna Inc., No. 99-1969, 1999 WL 800315, at *2 (E.D. Pa. Sept. 29, 1999) aff'd, 221 F.3d 472 (3d Cir. 2000) ("The HMOs simply cannot be 'worth less' unless something plaintiffs were promised was denied them."); Waiserman, No. 14-667, Dkt. No. 84, at

*4 (finding no standing where insurance policy was enforceable under state law and allegations that insurer would not pay were speculative because no claim had been filed); Petruzzo, No. 12-113, Dkt. No. 181, at *13-16 (finding no standing where insurer would have to comply with policy despite statutory deficiency but plaintiff had not filed any claim).[3]

Because this first theory turns on a question of law, and because new factual assertions would not overcome the above-explained legal deficiencies, the claim is dismissed with prejudice.

### 2. Misrepresentation in Sale of HealthExtra Policy

Under their second theory, Plaintiffs allege that Defendants falsely and deceptively advertised the HealthExtras Policy. See TAC ¶¶ 104-21, 169, 172. They allege that Defendants sent direct mail advertisements to Plaintiffs that promised certain coverage, but the actual policies contain much more restrictive terms. Id. ¶¶ 104-05. Defendants argue that Plaintiffs have not pled their claim with particularity as required by Rule 9(b). The Court agrees.

Plaintiffs' general allegations of fraudulent advertising do not meet the standards of particularity required under Rule 9(b) or the NJCFA. In support of their claim, Plaintiffs cite five statements from HealthExtras advertisements, then assert that "policy series C11695DBG is replete with extremely harsh, restrictive and confusing exclusions and contradictory terms and definitions which intentionally renders the policy virtually worthless to purchasers." TAC ¶ 105. Plaintiffs do not allege, in particular, which policy provisions were inconsistent with the advertising statements; which Defendants (identified individually, not collectively) made the

---

[3] Defendants also argue that the policy was void and worthless because "Defendants failed to obtain the proper approvals from the Department of Insurance prior to selling the policies and/or collecting premiums and/or raising the premium rates." TAC ¶ 170. Just as above, this may constitute a violation of a rule directed at the insurer, but it would not impact whether Defendants would be required to pay a valid claim. This theory fails for the same reasons.

10

statements; when the statements were made; who relied on these statements; when Plaintiffs relied on them; or any other substantiating information. Absent this information, Plaintiffs do not state a claim under Rule 9(b) or the NJCFA.

Unlike their first theory, however, Plaintiffs may overcome these deficiencies by including additional factual allegations pertaining to fraudulent marketing. The claim is therefore dismissed without prejudice.

### B. Count Two: Breach of the duty of good faith and fair dealing as to all Defendants

Plaintiffs claim that Defendants, individually and collectively, knew that they could only sell the subject policy to legal "blanket groups," and that issuing the policy to the Trust as a purported policy holder was illegal because it was not an authorized "blanket group" under New Jersey law. TAC ¶ 181. Plaintiffs claim that despite this knowledge, Defendants failed to reveal to Plaintiffs that their policy was illegal, that their premiums were thus illegal and unapproved, and that they were part of an illegal "blanket group." Id. ¶ 183. As a result, Plaintiffs contend that Defendants breached their duty of good faith and fair dealing. Id. ¶ 184.

Defendants move to dismiss arguing, inter alia, that Plaintiffs' claim rests on events surrounding the formation of a contract, as opposed to the performance and enforcement of it, and as such, is not actionable as a breach of good faith and fair dealing. The Court agrees.

To assert a claim for breach of the implied covenant of good faith and fair dealing, a complaint must establish (1) the existence of a valid contract, see Iwanicki v. Bay State Milling Co., No. 11-1792, 2011 U.S. Dist. LEXIS 140944 (D.N.J. Dec. 7, 2011), and (2) the defendant had a "bad motive or intention" and engaged in "conduct that denied the benefit of the bargain originally intended by the parties." Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 225 (2005) (internal citations and quotations omitted). "The implied

covenant of good faith and fair dealing focuses on the performance and enforcement of a valid agreement more than it regulates contract formation." HSBC Bank USA, Nat. Ass'n v. Woodhouse, No. A-1736-10T4, 2012 N.J. Super. Unpub. LEXIS 1152 (N.J. Super. Ct. App. Div. May 24, 2012); see also Zodda v. Nat'l Union Fire Ins. Co., No. 13-7738, 2015 U.S. Dist. LEXIS 26206 (D.N.J. Mar. 4, 2015) (dismissing the good faith and fair dealing claim because the allegations "address contract formation rather than performance or enforcement").

Plaintiffs' allegations focus on Defendants actions in the sale and formation of the HealthExtras Policy, as opposed to the performance and enforcement of it. As discussed above, the policy here remains enforceable. Plaintiffs fail to show how Defendants engaged in conduct that denied Plaintiffs the benefit of the bargain originally intended by the parties. Plaintiffs do not articulate why what they paid for was not what they received. Plaintiffs do not allege that they suffered a covered injury, that they tendered a claim for disability benefits, or that any Defendants ever denied any such claims. Plaintiffs have failed to allege facts sufficient to support a claim that Defendants committed any breach in the performance and enforcement of the terms of the policy. Plaintiffs claim fails.

### C. Count Three: Unjust Enrichment as to all Defendants

Plaintiffs contend that Defendants failed to disclose that the insurance coverage being sold was illegal and that Plaintiffs were not members of a legal "blanket group." TAC ¶ 190. Plaintiffs claim that by purchasing the coverage and paying premiums, Plaintiffs conferred a benefit upon Defendants, without knowing that the coverage was illegal. Id. ¶ 191. Plaintiffs contend that they spent thousands of dollars in premiums for an illegal policy that could never be approved by the New Jersey Department of Insurance. Id. ¶ 193. As a result, Plaintiffs claim

that Defendants have been unjustly enriched in retaining the payments paid by Plaintiffs and Class Members for the disability coverage. Id. ¶ 194.

Defendants contend that Plaintiffs' claim for unjust enrichment fails because there is an enforceable contract—the HealthExtras Policy—that governs. The Court agrees.

"To establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994). New Jersey law provides that "[t]he presence of a valid, unrescinded contract between the parties excludes any claim of unjust enrichment concerning that same subject matter." Bowen v. Bank of Am., No. 14-353, 2015 U.S. Dist. LEXIS 124871 (D.N.J. Sept. 18, 2015); Van Orman v. Am. Ins. Co., 680 F.2d 301, 310 (3d Cir. N.J. 1982) ("[R]ecovery under unjust enrichment may not be had when a valid, unrescinded contract governs the rights of the parties."); Winslow v. Corporate Exp., Inc., 364 N.J. Super. 128, 143 (App. Div. 2003). Plaintiffs' theory of unjust enrichment relies on the same theory as the NJCFA claim—that the policy at issue is void. Because the insurance policy is enforceable, Plaintiffs have failed to state a claim of unjust enrichment under New Jersey law.

Defendants also contend that Plaintiffs' unjust enrichment claim fails because it is derivative of the NJCFA claim. Again, the Court agrees.

Plaintiffs do not claim they were denied coverage, but instead allege that they were misled about the legality of the insurance coverage. This claim rests on allegations of fraudulent misrepresentations and/or omissions. Such allegations sound in tort, and New Jersey does not recognize unjust enrichment as an independent tort cause of action. See Warma Witter Kreisler, Inc. v. Samsung Elecs. Am., Inc., No. 08-5380 (JLL), 2009 WL 4730187, at *7 (D.N.J. Dec. 3, 2009). Therefore, Plaintiffs' unjust enrichment claims fails for this additional reason. See, e.g.,

13

Nelson v. Xacta 3000 Inc., No. 08–5426, 2009 WL 4119176, at * 7 (D.N.J. Nov. 24, 2009) (dismissing unjust enrichment claim after finding that "New Jersey law does not recognize unjust enrichment as an independent tort cause of action"); Blystra v. Fiber Tech Group, Inc., 407 F. Supp. 2d 636, 644 n. 11 (D.N.J.2005).

### D. Count Four: Conversion as to all Defendants

Plaintiffs contend that Defendants unilaterally increased premiums without notice or regulatory approval and debited the credit card or bank accounts of the Plaintiffs for the increased amount. TAC ¶ 200. Plaintiffs also contend that Defendants have appropriated the Plaintiffs' personal property for their own use by intentionally exercising dominion and control over the amount of the illegal unauthorized premiums by debiting the Plaintiffs' credit card or bank accounts and retaining those unauthorized increased amounts. Id. ¶ 201.

Defendants argue that Plaintiffs claim for conversion fails for two reasons. First, Plaintiffs' claim fails because they have not plead that their insurance premium payments were separately maintained or identifiable as required by New Jersey law. They are correct.

A conversion claim in New Jersey is defined as "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." Barco Auto Leasing Corp. v. Holt, 228 N.J. Super. 77, 83, 548 A.2d 1161 (App. Div.1988). When money, as opposed to tangible property, is the subject of a conversion claim, New Jersey courts require that a plaintiff show something more than a contractual obligation on the part of a defendant to pay the plaintiff to establish conversion. Advanced Enterprises Recycling, Inc. v. Bercaw, 869 A.2d 468, 472 (N.J. Super. App. Div. 2005). The plaintiff must show that the money in question was identifiably the plaintiff's property or that the defendant was obligated to segregate such money

14

for the plaintiff's benefit.  Scholes Elec. & Commc'ns, Inc. v. Fraser, No. 04-3898, 2006 WL 1644920, at *5 (D.N.J. June 14, 2006).

In Worldwide Labor Support of Ill., Inc. v. Cura Grp., Inc., the court explained that "[w]hile it appears that New Jersey Courts have not addressed whether payments by an insured to an insurer can be the subject of conversion, other state courts have held that they generally cannot be" due to lack of segregation of the funds.  No. 05- 1105, 2009 WL 961485, at *14 (D.N.J. Apr. 6, 2009) (citing Willingham v. United Ins. Co. of Am., 628 So.2d 328, 333 (Ala. 1993) (finding no conversion where there was no evidence that insurance premiums were "segregated or identifiable"); Austin v. Indep. Life and Accident Ins. Co., 370 S.E.2d 918, 921-22 (S.C. Ct. App.1988) (finding no conversion where there was "no evidence in the record [plaintiff's] premiums were separately maintained by [the insurance company] and not commingled with other premiums").  Because Plaintiffs have not plead that their premiums were maintained separately or held in trust, their claims for conversion fails.

Second, Defendants claim that when a relationship is governed by a contract, there cannot be a viable cause of action for conversion.  This Court agrees.

Where, as here, the relationship of the parties is governed by contract, there is no viable cause of action for conversion.  See Roper v. Davis Saperstein & Salomon, P.C., No. PAS-L-02168-04, 2006 WL 1585222, at *6 (N.J. Super. Ct. Law Div. June 7, 2006) aff'd, No. A-5785-05T3, 2008 WL 564957 (N.J. Super. Ct. App. Div. Mar. 4, 2008).  As discussed above, the HealthExtras Policy is an enforceable contract between the parties.  Plaintiffs even allege that their relationship with Defendants is governed by a contract.  See TAC ¶¶ 199-200.  Plaintiffs claim for conversion fails on this ground as well, and is dismissed with prejudice.

### E. Count Five: Civil Conspiracy as to all Defendants

Plaintiffs allege that Defendants engaged in a conspiracy to utilize their efforts to sell, broker, underwrite, collect, allocate and share premiums derived from the HealthExtras disability insurance policy to Plaintiffs and the putative Class Members, for their own and individual benefit, without fully disclosing that the policies being sold to them did not and could not comply with New Jersey law. TAC ¶ 206. Plaintiffs claim that in marketing, sale, brokerage, servicing, underwriting and administration of the illegal policies, all Defendants agreed and conspired for the purpose of lawful activities by unlawful means or unlawful activities by lawful means. Id. ¶ 209.

Defendants argue, inter alia, that Plaintiffs' civil conspiracy claim fails because Plaintiffs fail to plead the claim with particularity as required by Rule 9(b) and because they fail to assert an underlying tort claim if the NJCFA and conversion claims are dismissed. They are correct.

In New Jersey, a civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." Banco Popular N. Am. v. Gandi, 184 N.J. 161, 876 A.2d 253, 263 (2005). "[T]o succeed on a civil conspiracy claim, the plaintiff must assert an underlying tort claim." Zodda, 2014 WL 1577694, at *5 (quoting Trico Equip., Inc. v. Manor, No. 08-5561, 2011 WL 705703, at *8 (D.N.J. Feb. 22, 2011). If there is no valid underlying tort, a claim for civil conspiracy should be dismissed. See Dist. 1199P Health & Welfare Plan v. Janssen, L.P., 784 F. Supp. 2d 508, 533 (D.N.J. 2011) ("Under New Jersey law, a claim for civil conspiracy cannot survive without a viable underlying tort, and because all of Plaintiffs' tort claims fail as a matter of law, Plaintiffs' civil conspiracy claim must be dismissed.").

As discussed above, Plaintiffs' conversion claim and NJCFA claim have been dismissed. Accordingly, Plaintiffs do not have any underlying tort to rest their civil conspiracy claim on, and it therefore fails. Since Plaintiffs' NJCFA claim is dismissed without prejudice, Plaintiffs' civil conspiracy claim will be as well. If Plaintiffs re-plead their NJCFA claim, it may re-plead their allegations for civil conspiracy. The Court notes, however, that because this claim sounds in fraud it must comply with Rule 9(b).[4] See Virginia Sur. Co. v. Macedo, No. 08-5586, 2009 WL 3230909, at *11 (D.N.J. Sept. 30, 2009).

### IV. Conclusion

For the reasons set forth herein, Defendants' motions to dismiss, Dkt. Nos. 176-179, are **GRANTED.** An appropriate Order accompanies this Opinion.

Dated: December 4, 2015

/s Madeline Cox Arleo
**Hon. Madeline Cox Arleo**
**United States District Judge**

---

[4] As currently pled, the Court finds that Plaintiffs' allegations of a civil conspiracy fail to comply with Rule 9(b). Plaintiffs lump all of the Defendants together, fails to plead facts that show an agreement between the Defendants, what the terms were of the agreement, when the alleged conspiracy took place, or how the conspirators reached their agreement.