# EXHIBIT 2

Exhibit 2

## JOINT DECLARATION IN SUPPORT OF PLAINTIFFS' AND CLASS COUNSEL'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

Joseph "Jay" Aughtman, Kenneth Grunfeld and Aaron Hemmings declare as follows:

1.      We are Class Counsel for Plaintiffs and the Settlement Class under the Settlement Agreement and Release (Settlement Agreement, attached hereto as Exhibit A) entered into with the Defendants, including (a) National Union Fire Insurance Company of Pittsburgh, Pa. (National Union) and American International Group, Inc., AIG Group Insurance Trust, AIG Group Insurance Trust, For the Account of HealthExtras (collectively, AIG); (b) Virginia Surety Company, Inc. (Virginia Surety); (c) Catamaran Health Solutions, LLC, Catalyst Health Solutions, Inc., HealthExtras Insurance Agency, Inc. and HealthExtras, Inc. (Catamaran or Healthextras), and; (d) Alliant Insurance Services, Inc., Alliant Insurance Services Houston, LLC and Alliant Services Houston, Inc. (Alliant).[1]  We submit this declaration in support of Plaintiffs' and Class Counsel's Unopposed Motion for Preliminary Approval of Class Settlement and Certification of the Settlement Classes.  Except as otherwise noted, we have personal knowledge of the facts set forth in this declaration, and could testify competently to them if called upon to do so.

2.      After more than four years of hard-fought litigation and settlement negotiations, the Parties entered into the Settlement providing for a Fifteen Million Dollar ($15,000,000.00) Settlement Amount, which includes cash recovery for the Settlement Class and Defendants' payment of all fees, costs and expenses associated with providing Notice to the Settlement Class and the administration of the Settlement.  Under the Settlement, all Settlement Class Members that submit claims will receive their *pro rata* share of the Distributable Settlement Fund.

---

[1] All capitalized defined terms used herein have the same meanings ascribed in the Settlement Agreement.

Exhibit 2

3.      The Actions involved sharply opposed positions on several fundamental legal and factual issues.  Plaintiffs and Class Counsel maintain that the claims asserted in the Actions are meritorious and that Plaintiffs would prevail if the Actions proceeded to trial.  Defendants deny any liability, maintain that Plaintiffs' claims are unfounded and cannot be maintained as a class action, and have demonstrated they will litigate their defenses vigorously.  Continued litigation presented significant risks, delays and expenses that include, but are not limited to, Rule 12 dismissal, summary judgment and pretrial motions, trial, final appellate review, and the countless uncertainties of litigation, particularly in the context of a large, complex, non-coordinated group of Actions in multiple district courts across the country.

4.      In light of the risks, delays and expenses associated with continued litigation, the Settlement represents an outstanding result by providing guaranteed benefits to the Settlement Class.

**A.      <u>Background of the Litigation</u>**

5.      Plaintiffs sought monetary damages from Defendants, on behalf of themselves and all others similarly situated, because Plaintiffs contend the Defendants were involved in a decade-long scheme to sell "jackpot" group insurance framed as legitimate disability insurance that almost never bore benefits and never was, and never could have been, approved by various states' Departments of Insurance, because the Defendants were selling the product to an illegally formed group that they themselves created.

6.      Defendants denied all of Plaintiffs' allegations of wrongdoing.  The Defendants consistently defended their conduct by, *inter alia*, highlighting language in the relevant agreements asserting that the applicable statute of limitations bars relief, challenging class members' cognizable injury or standing, and attacking Plaintiffs' core legal and factual allegations regarding illegality.

Exhibit 2

### B.    Class Counsel's Investigation

7.    Class Counsel devoted substantial time to investigating the potential claims. Class Counsel interviewed dozens of customers and potential plaintiffs to gather information about the alleged conduct and its impact upon customers.  Most significantly, Class Counsel litigated, and continues to litigate on behalf of one person, individual claims of wrongful denial of coverage.  Gleaning this information was essential to Class Counsel's ability to understand the nature of the conduct, what was promised, the illegality of the actions, and potential remedies.

### C.    The Course of Proceedings

8.    On March 6, 2012, Plaintiff Mario Petruzzo initiated this litigation against Defendants with the filing of *Petruzzo v. National Union, et al.*, 5:12-cv-00113-FL (E.D.N.C.).

9.    Since then, sixteen (16) additional cases have been filed in federal district courts in New Jersey, California, Georgia, Tennessee, South Carolina, Arkansas, Louisiana, Washington D.C., New York and Florida with almost thirty class representatives and naming varying defendants, but with the marketing entity, Catamaran, f/k/a HealthExtras, common to all cases.  *See* Ex. 1 to the Preliminary Approval brief.

10.    In these cases, Plaintiffs' counsel responded to a total of sixteen motions to dismiss.  Four of those cases were voluntarily dismissed before a ruling was made, four motions were denied, five were granted, and three were still pending as of the date of the Settlement. Four appeals of district court decisions on motions to dismiss were filed and briefed in various Appellate Courts, and one additional appeal was filed following a summary judgment order in Georgia.  All five appeals were pending as of the date of settlement.  Two appeals were set for oral argument.  Of the cases that remain in district courts, three cases have class certification and/or summary judgment briefing scheduled in 2016.

Exhibit 2

11.     Formal discovery was reached and conducted in nine different cases.  Protocols for confidentiality and Electronically Stored Information (ESI) format coordination were negotiated.  The Parties exchanged over 2 million pages of records, responded to over 500 interrogatories, and conducted 17 depositions all across the country.

12.     In September and October 2014, the Defendants canceled the HealthExtras Program nationwide and sent cancelation notices to all members effective December 31, 2014.

13.     Immediately afterwards, Healthextras, LLC filed for bankruptcy, on January 9, 2015, in the U.S. bankruptcy Court for the District of Maryland.  *In Re. HealthExtras, LLC,* BK No. 15-10368 (Bankr. Md. January 9, 2015).

### D.     Settlement Negotiations

14.     In 2014, the Parties first began to discuss case resolution but did not stay the cases pending these discussions.

15.     The Parties agreed upon and jointly engaged the Honorable Judge John Martin (ret.) to mediate the case and undertook in-person mediation in New York City in October of 2014.  Mediation was conducted over a two-day period and was unsuccessful in resolving the Actions.

16.     Settlement discussions between the Parties and with Judge Martin continued over the next year.  An additional in-person mediation date was set for September of 2015, but was subsequently cancelled.

17.     Settlement discussions continued from December of 2015 through early May of 2016.   A Defendants-only meeting took place on April 29, 2015 which led to the Parties' agreement on the terms of a settlement in principle, which was then codified in a Memorandum of Understanding.

Exhibit 2

18.     The Parties then undertook further negotiations to establish the terms of the Settlement.  These hard-fought and often contentious negotiations over the written terms of the Settlement lasted almost three months and required numerous all-counsel telephone calls and also involved and required input from the Settlement Administrator and the HealthExtras LLC Trustee and his counsel.

19.     Stonebridge Life Insurance Company is not one of the Defendant Released Parties, did not participate in this Settlement, and litigation against Stonebridge continues today.

**E.     Settlement Class and Recovery Under the Agreement**

20.     The Settlement requires Defendants to deposit Fifteen Million Dollars ($15,000,000.00) into an Escrow Account within thirty (30) days following Preliminary Approval.  Agreement ¶ 3.1(a).  That deposit will create the Settlement Fund.

21.     Settlement Class Members have been identified through a complex analysis of data that was maintained by HealthExtras, LLC in an AS400 system that exists essentially offline only at a non-party's office in Maryland.

22.     The Parties have had numerous meetings and communications regarding the methodologies that will be used to determine a fair and feasible way to distribute available funds to Settlement Class Members.

23.     Ultimately, the Parties have established the following framework and formulas to provide available funds to Settlement Class Members.  *See* Settlement Agreement ¶ 3.2.

a.     Seventy-five percent (75%) of the Distributable Settlement Amount shall be provided to HealthExtras Settlement Class Member Claimants and twenty-five percent (25%) of the Distributable Settlement Amount shall be provided to Stonebridge Settlement Class Member Claimants.

b.      HealthExtras Settlement Class Member Claimants will be paid out of the Distributable Settlement Amount based on how much each Claimant paid as membership fees for the Benefits Programs.  Membership fees paid for the Benefits Programs prior to January 1, 2005 shall be discounted fifty percent (50%) (Adjusted Membership Fee) in calculating the amount paid for each Claimant.  *Id.* at ¶ 1.1.  The total amount paid per Claimant will then be calculated and a *pro rata* amount reflecting the Distributable Settlement Amount will then be paid to each HealthExtras Settlement Class Member Claimant.

c.      Stonebridge Settlement Class Member Claimants will be paid out of the Distributable Settlement Amount based on how much long, in years, each Claimant was enrolled in the Benefit Program.  The total number of years claimed will be calculated and an amount of recovery per year *pro rata* will be determined reflecting the Distributable Settlement Amount.  Then each Stonebridge Settlement Class Member Claimant will receive the per year amount multiplied by the number of years each Claimant was enrolled in the Benefit Program.

**F.      Class Release**

24.      In exchange for the benefits conferred by the Settlement, all Settlement Class Members who do not opt out of the Settlement will be deemed to have released the Defendant Released Parties (*see* Settlement Agreement at ¶ 1.15) from Released Claims (*id.* at ¶ 1.31).  The detailed release language is found in Section V of the Agreement.

25.      Stonebridge Life Insurance Company has not contributed to this settlement, and is not being released by the Plaintiffs in this Settlement.  Plaintiffs continue to pursue legal actions against Stonebridge.

26.      Despite the fact that Plaintiffs do not release Stonebridge Life Insurance Company, Plaintiffs have agreed with the Defendant Released Parties that they shall not be responsible for any liability to the Stonebridge Settlement Class Member Claimants that the

Exhibit 2

Defendant Released Parties may incur in connection with their involvement with the Benefits Program underwritten by Stonebridge beyond the terms of this Settlement. The Parties have entered into the Settlement Agreement, and specifically section VII (Judgment Reduction), to reflect that understanding.

      **G.**     **Settlement Notice**

27.     Heffler Claims Group will serve as the Settlement Administrator for the Agreement and will oversee the Notice plan. *Id.* at ¶ 1.33. All of the fees, costs and expenses of the Settlement Administrator and Notice plan will be paid out of the Settlement Fund.

28.     Notice will be provided in a number of different ways. First, all Settlement Class Members will receive Postcard Notice through U.S. mail directly to their last known address. *Id.* at ¶ 2.5 (Postcard Notice substantially in the form attached as Exhibit B). The Postcard Notice will direct Settlement Class Members to the Settlement Website and the Settlement Telephone Number. The Settlement Website will include hyperlinks to the Settlement Agreement, the Long-Form Notice, the Preliminary Approval Order, and such other documents as counsel agree to post or that the Court orders posted on the Settlement Website. These documents will remain on the Settlement Website at least until Final Approval. *Id.* Also included on the Settlement Website will be a hyperlink to a Claim Form which can be submitted online through the Settlement Website or mailed to the Settlement Administrator. *Id.* at ¶ 2.8 (Long Form Notice and Claim Form substantially in the form attached respectively as Exhibits C and D). The Settlement Telephone Number will also include references to important documents and information, including deadlines, and will allow Settlement Class Members to leave messages to be returned by the Settlement Administrator or Class Counsel. *Id.* at ¶ 2.9. In addition, the Settlement Administrator will cause to be published Notice of the Settlement (Published Notice) in Readers' Digest or a similar periodical with national circulation as recommended by the media

Exhibit 2

group of the Settlement Administrator.  Published Notice will refer class members to the Long

Form Notice maintained on the Settlement Website.  *Id.* at ¶ 2.6 (Published Notice substantially

in the form attached as Exhibit E).

29.    The Notice plan is reasonably calculated under the circumstances to apprise the

Settlement Class Members of the pendency of the Actions, class certification, the terms of the

Settlement, Class Counsel's Fee and Expense application and request for Case Contribution Fees

for class representatives, and their rights to opt-out of the Settlement Class or object to the

Settlement.  The Notice and Notice plan constitute sufficient Notice to all persons entitled to

notice.  The Notice and Notice plan satisfy all applicable requirements of law including, but not

limited to, Federal Rule of Civil Procedure 23 and the Constitutional requirements of due

process.  The Notice plan is designed to reach a high percentage of Settlement Class Members

(including most by direct mail, the best possible form of notice), and exceeds the requirements of

constitutional due process.

30.    Postcard Notice will be mailed between 30 and 60 days after Preliminary

Approval.  The Settlement Administrator will perform reasonable address traces for Postcard

Notices that are returned as undeliverable.  The Settlement Website and Settlement Telephone

Number will be active 30 days after Preliminary Approval.  Published Notice will be published

as contemporaneously as possible with the mailing of the Postcard Notice.

31.    After receiving Notice, Settlement Class Members will be required to submit

Claims to receive relief under the Settlement.  The Claim Form has been crafted to be as simple

as possible.  No information is required to file a claim other than the Settlement Class Members'

signature, affirmation of assent, and a current mailing address.

Exhibit 2

### H.   <u>Settlement Termination</u>

32.     Either Party may terminate the Settlement if the Settlement is rejected or materially modified by the Court or an appellate court.  *Id.* at ¶¶ 8.1, 8.2.  Defendants also have the right to terminate the Settlement if the number of Settlement Class Members who timely opt out of the Settlement Class equals or exceeds 5%.  *Id.* at ¶ 8.3.

33.     The Parties have agreed that if the Settlement is terminated at any time for any reason, the Settlement Fund will be returned to the Defendants less any costs spent in the interim by the Settlement Administrator.  *Id.* at ¶ 8.5.

### I.   <u>Remaining Funds</u>

34.     If Claimants fail to cash checks within ninety (90) days of their issuance, that money, along with any undistributed interest earned by the Escrow Account, will remain in the Escrow Account to pay for costs and expenses or to re-issue checks to Settlement Class Members, for an additional 180 days.  Following that time period, if money remains in the Escrow Account, the Parties will seek a *cy pres* award from the Court to donate the money that remains in the Escrow Account in equal shares to (a) The Buoniconti Fund to Cure Paralysis; (b) American Spinal Injury Association; (c) Paralyzed Veterans of America; and (d) Spinal Cord Opportunities for Rehabilitation Endowment, all charitable entities that assist people suffering from significant spine and mobility-related injuries.

### J.   <u>Case Contribution Fees and Attorneys' Fees and Costs</u>

35.     Class Counsel will seek, and Defendants will not oppose, Case Contribution Fees not to exceed $4,000 per HealthExtras Settlement Class Representative (16 total) and $2,500 per Stonebridge Settlement Class Representative (6 total).  *Id.* at ¶ 6.1.  If the Court approves them, the Case Contribution Fees will be paid from the Settlement Fund, and will be in addition to the relief the Class Representatives will be entitled to under the terms of the Settlement.  *Id.*  The

requested Case Contribution Fees will compensate the Class representatives for their time and efforts, and for the risks they assumed in prosecuting the case.

36.    Defendants will not oppose Class Counsel's request for Attorneys' Fees of up to $5,000,000.00, plus reimbursement of litigation Expenses.  *Id.* at ¶ 6.2.  The Parties negotiated and reached this agreement regarding Attorneys' Fees and Expenses only after reaching agreement on all other material terms of this Settlement.

37.    Each of the three firms that make up Class Counsel for the Plaintiffs in these Actions add significant value to the case with substantial knowledge of the Defendants' operation, significant experience in litigating complex consumer class actions in general and specifically against insurance companies.

       a.    <u>Golomb & Honik</u>

Golomb & Honik, P.C. has successfully handled national, regional, and statewide class actions, as well as other complex mass or multi-party actions, throughout the United States in both federal and state courts, including: *Refund Anticipation Loan Litigation*, No.1:12-cv-02949 (N.D. Ill. 2012); *Spinelli v. Capital One Services*, No. 08-cv-132 (M.D. Fla. 2008); *Kardonick v. JP Morgan Chase & Co.*, No. 10-cv-23235 (S.D. Fla. 2010); *In re Discover Payment Protection Plan Marketing & Sales Practices Litigation*, MDL No. 2217 (N.D. Ill. 2011); *Esslinger v. HSBC Bank USA, Inc.*, No. 2:10-cv-03213 (E.D. Pa. 2010); *In re Bank of America Credit Protection Marketing & Sales Practices Litigation*, No. 3:11-md-02269 (N.D. Cal. 2011); *In re Budeprion XL Marketing & Sales Litigation*, MDL No. 2107 (E.D. Pa. 2012); *In re Checking Account Overdraft Litigation*, MDL No. 2036 (2009); *Mattel Lead Paint Class Action,* MDL No. 1897 (2007); *David v. American Suzuki Motor Corp.*, No. 08-CV-22278 (2007); *Cullen et al. v. Whitman Medical Corporation d/b/a Whitman Education Group, Inc., et al.*, 197 F.R.D. 136

Exhibit 2

(E.D. Pa. 2000); and *Whisnant, et al. v. General Chemical Corp.*, et al. No. 99-12286, Court of Common Pleas of Delaware County, Pa., 1999. Golomb & Honik served on the Executive Committee in the multi-district litigation styled *In re Budeprion XL Sales & Marketing Practices Litigation*, and currently serves as Liaison Counsel in the multi-district litigation styled *In re Benicar (Olmesartan) Litigation*.

<blockquote>b. <u>Hemmings & Stevens</u></blockquote>

Hemmings & Stevens, P.L.L.C. has been investigating and bringing cases on behalf of victims of the Benefits Programs against the Defendants for well over five (5) years, including before the filing of the first class action in 2012. The firm, and Aaron Hemmings personally, is nationally regarded as the attorney with the most knowledge regarding the Benefits Programs generally and the Healthextras business specifically. He has personally spoken to many dozens if not hundreds of victims of the Defendants' schemes across the country, including individuals who have filed claims for benefits and been denied. His knowledge and experience in prosecuting these claims has been paramount to the class action litigation, in which he assisted in the development of theories for recovery and actively assembled a team of class action law firms to prosecute the Actions currently filed nationwide. Since the filing of the first class action in 2012, Hemmings & Stevens, P.L.L.C. has been closely involved in all stages of this litigation, including motion practice, discovery and the appeals taken.

<blockquote>c. <u>Aughtman Law Firm</u></blockquote>

Prior to creating the Aughtman Law Firm over four years ago, principal attorney Mr. Aughtman was class counsel for a number of certified classes as a member of his former law firm, Beasley Allen. The Aughtman Law Firm is co-lead counsel in *Keller, et al. v. Victoryland*, 3:07-cv-01098-WKW-TFM.

Along with Mr. Hemmings, the Aughtman Law Firm, LLC, and Mr. Aughtman specifically, investigated the Benefits Programs prior to the first filed class action in 2012. He created and to a large extent quarterbacked the team of class action law firms assembled to prosecute the Actions, and oversaw all work performed nationwide. In doing so, he personally assisted in the development of theories for recovery and was closely involved in all stages of this litigation, motion practice, discovery and the appeals taken.

### K.   Considerations Supporting Settlement

1.   The Settlement is the Product of Good Faith, Informed and Arm's-Length Negotiations

38.   Settlement negotiations were informed by the experience of counsel for both sides in the litigation, certification, trial and settlement of nationwide class action cases, including consumer cases. In particular, Class Counsel had the benefit of years of experience, a familiarity with the facts of this Action, as well as with other cases involving similar claims.

39.   As detailed above, Class Counsel conducted a thorough investigation and analysis of Plaintiffs' claims and engaged in extensive discovery with the Defendants. Class Counsel's review of that extensive discovery enabled them to gain an understanding of the evidence related to central questions in the Action, and prepared them for well-informed settlement negotiations.

2.   Risks Associated with Continued Litigation Favor Settlement

40.   Plaintiffs and Class Counsel are confident in the strength of Plaintiffs' case, but are also pragmatic in their awareness of the various defenses available to the Defendants, and the risks and uncertainties inherent in continued litigation.

41.   Protracted litigation carries inherent risks, uncertainties, and inevitable delay. Under the circumstances, Plaintiffs and Class Counsel determined that the Settlement outweighed the risks of continued litigation.

3.      The Settlement Amount Is Reasonable Given the Range of Possible Recovery

42.      The $15,000,000.00 Settlement Fund is a significant amount of money given the challenges facing the Settlement Class Members.  While the Settlement Class Members have paid more that that amount in total in fees for these Benefits Programs over the entire Class Period, a sizable portion of that money went to entities that are not part of this lawsuit (Non-Settling Parties) that did not contribute to the Settlement Fund.  In addition, the Class includes individuals that did not file claims for benefits under the Benefits Programs, such that Defendants have taken the position that they lack standing to sue.  Plaintiffs disagree regarding the standing issue and have litigated against this position, but it does pose a significant legal risk to recovery.  Finally, a good portion of the money enrollees paid for these Benefits Programs occurred prior to 2005.  The Defendants have challenged the timing of these Actions, and if they were to be successful in enforcing a shortened statute of limitations period, the total damages potentially recoverable would be significantly diminished further.

43.      The Defendants' payment of all costs associated with the Notice plan and administration of the Settlement as part of the Settlement Fund also benefits the Classes.  The recovery under this Settlement, without further litigation risks or delays, is an outstanding result for Settlement Class Members in light of the existing defenses, and the challenging and unpredictable path of litigation that would have been faced absent the Settlement.  We believe the $15,000,000.00 Settlement Fund represent an excellent result.

4.      The Complexity, Expense, and Duration of Ongoing Litigation Favors Settlement

44.      The proposed Settlement is the best vehicle for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner.  One of the most expensive aspects of ongoing litigation of the Actions involves the retention and use of experts to

Exhibit 2

perform analyses, prepare expert reports, and appear at deposition and trial.  Efforts for the identification, vetting and preparation for this expert work had begun, but the truly expensive, burdensome needs for expert testimony by the Parties have been largely avoided by this Settlement at this time.

>            5.      Proceedings Are at an Appropriate Stage for Settlement

45.      There are a number of separate Actions taking place that are encompassed by the Settlement.  Each are at different procedural stages.  *See supra* ¶ 10.

46.      The fact discovery that has been conducted is significant.  *See supra* ¶ 11. Review of those documents and deposition testimony positioned Class Counsel, highly familiar with the challenged practices and defenses at issue in the Actions through their experience litigating against these Defendants and in similar cases, to evaluate with confidence the strengths and weaknesses of the claims and the prospects for success moving forward.

## L.    **Class Certification for Settlement Purposes**

47.      The Parties have agreed that the Class Representatives will seek leave to file a Further Amended Complaint in the United States District Court for the District of New Jersey asserting a nationwide class against all of the Defendants.  *See* Settlement Agreement at p. 2 and ¶ 8.5.

48.      Based on the Further Amended Complaint, class certification of a Settlement Class is appropriate and fully warranted.  Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.  Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the members of

the class predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

49.     The numerosity requirement of Rule 23(a) is satisfied because the Settlement Classes consists of hundreds of thousands of individuals each.  The HealthExtras Class's Benefits Programs were underwritten by National Union Fire Insurance Company of Pittsburgh, Pa. Federal Insurance Company, Reliance National Insurance Company, Zurich American Insurance Company or AMEX Assurance Company (*id.* at ¶ 1.24, the HealthExtras Settlement Class), and the Stonebridge Class's Benefit Programs were underwritten by J.C. Penny Life Insurance Company or Stonebridge Life Insurance Company (*id.* at ¶ 1.37, the Stonebridge Settlement Class).

50.     The commonality requirement is satisfied because there are multiple questions of law and fact – centering on the Defendants specific practices – that are common to the Settlement Class, that are alleged to have injured all Settlement Class Members in the same way, and that would generate common answers central to the viability of the claims were the Actions to proceed to trial.

51.     Class Representatives are typical of absent Settlement Class Members because they were subjected to the same practices and claim to have suffered from the same injuries, and they will all benefit from the relief provided by the Settlement.

52.     Adequacy is established because Class Representatives' interests are coextensive with, not antagonistic to, the interests of the Settlement Class; because Class Representatives and absent Settlement Class Members have an equally great interest in the relief offered by the Settlement; and because absent Settlement Class Members have no diverging interests.  Further, Class Counsel are qualified and competent and have extensive experience prosecuting complex

Exhibit 2

class actions, including consumer actions similar to the instant case. *See supra* ¶ 37. Class Counsel have devoted substantial time and resources to vigorously litigating the Actions from inception through the Settlement. *See id.*

53. Class representatives satisfy the predominance requirement because liability questions common to all Settlement Class Members substantially outweigh any possible issues that are individual to each Settlement Class Member. For example, each Settlement Class Member's relationship with Defendants arises from enrollment and membership in the Benefits Programs that are the same or substantially similar in all relevant respects to other Settlement Class Members' relationship with Defendants regarding the Benefits Programs.

*        *        *

I declare under penalty of perjury of the laws of New Jersey and the United States that the foregoing is true and correct, and that this declaration was executed in Montgomery, Alabama, on September 9, 2016.



*/s/ Jay Aughtman*
Joseph "Jay" H. Aughtman

I declare under penalty of perjury of the laws of New Jersey and the United States that the foregoing is true and correct, and that this declaration was executed in Raleigh, North Carolina, on September 9, 2016.

*/s/ Aaron Hemmings*
Aaron Hemmings

Exhibit 2


I declare under penalty of perjury of the laws of New Jersey and the United States that the foregoing is true and correct, and that this declaration was executed in Philadelphia, Pennsylvania, on September 9, 2016.


       *_/s/ Ken Grunfeld_*
       Kenneth J. Grunfeld

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY (NEWARK)**

| | | |
|---|---|---|
| Stephen Giercyk and Ajay Das, on behalf of themselves and all other similarly situated, | : | |
| | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| National Union fire Insurance Company of Pittsburgh, PA, d/b/a National Union Fire Insurance Company, a division of American International Group, Inc. (AIG), Healthextras, Inc., Healthextras Benefits Administrators, Inc., Catamaran Health Solutions, LLC f/k/a Catalyst Health Solutions, Inc., Healthextras Insurance Agency, Inc., American International Group, Inc., d/b/a Group Insurance Trust, for the account of Healthextras, Alliant Insurance Services, Inc., f/k/a Driver Alliant Insurance Services, Inc.,  Alliant Services Houston, Inc., f/k/a JLT Services Corporation, and Alliant Insurance, Services Houston, LLC, f/k/a Capital Risk, LLC and f/k/a Jardine Lloyd Thompson, LLC,  Healthextras, LLC and Virginia Surety Company, Inc. | : | Civil Action No: 2:13-cv-6272-FSH-MAH |
| | : | |
| | : | |
| | : | |
| | : | CLASS ACTION |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |

**SETTLEMENT AGREEMENT AND GENERAL RELEASE**

This Settlement Agreement and General Release ("Agreement"), dated as of August __, 2016, is entered into by and among the Class Representatives (as defined below), on their own behalf and on behalf of the Settlement Classes defined below, and defendants, National Union Fire Insurance Company of Pittsburgh, Pa., American International Group, Inc., AIG Group Insurance Trust, Virginia Surety Company, Inc., Catamaran Health Solutions, LLC, HealthExtras, Inc., Catalyst Health Solutions, Inc., HealthExtras Insurance Agency, Inc., Alliant Services Houston, Inc., Alliant Insurance Services, Inc., and Alliant Insurance Services Houston, LLC.

## RECITALS

WHEREAS, on March 6, 2012, Mario Petruzzo filed a putative class action against certain of the Defendants (as defined in paragraph 1.13) in the United States District Court for the Eastern District of North Carolina on behalf of himself and a putative class of North Carolina residents regarding certain of the Benefits Programs (as defined in paragraph 1.5).   *See Petruzzo v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 5:12-cv-113-FL (E.D.N.C.) ("*Petruzzo*");

WHEREAS on October 21, 2013, Stephen Giercyk filed a putative class action against certain of the Defendants in the United States District Court for the District of New Jersey, on behalf of himself and a putative class of New Jersey residents regarding certain of the Benefits Programs.   *See Giercyk v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 2:13-cv-6272-FSH (D.N.J.) ("*Giercyk*");

WHEREAS other Class Representatives (as defined in paragraph 1.11) filed additional putative class actions regarding certain of the Benefits Programs against some or all of the Defendants in Arkansas, California, Florida, Georgia, Louisiana, New York, Ohio, South Carolina, Tennessee, Texas, and Washington, D.C.   *See Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 1:14-cv-00892-RC (D.D.C.); *Gonzales v. Nat'l Union Fire Ins. Co. of*

*Pittsburgh, Pa.*, No. 15-cv-02259 (S.D.N.Y.); *Graham v. Catamaran Health Solutions*, No. 4:14-cv-589 (E.D. Ark.), on appeal No. 16-1161 (8th Cir.); *Johnson v. Catamaran Health Solutions, LLC*, No. 15-cv-61752-RNS (S.D. Fla.), on appeal No. 16-11735 (11th Cir.); *Patel v. Catamaran Health Solutions, LLC*, No. 15-cv-61891-BB (S.D. Fla.); on appeal No. 16-10613 (11th Cir.); *Smith v. Catamaran Health Solutions LLC*, No. 3:15-cv-02846 (D.S.C.); *Waiserman v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 2:14-cv-667 (C.D. Cal.), on appeal No. 14-56813 (9th Cir.); *Watson v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 2:14-cv-01312 (E.D. La.); *Williams v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 1:14-cv-00309-MHS (N.D. Ga.), on appeal No. 16-11302 (11th Cir.); *Williams v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 6:14-cv-00870-MGL (D.S.C.); *Riefer v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 1:14-cv-21958-KMM, *Riefer v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. CACE-14-016477 (Cir. Ct. Fla.); *Hine v. Catamaran Health Solutions, LLC*, No. BC 593510 (Super. Ct. Cal.); *Durcik v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 5:14-cv-1147-JRA (N.D. Ohio); *Broome v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 2:14-cv-156 (E.D. Tenn.); *Imes v. Catamaran Health Solutions, LLC*, No. 5:15-cv-101-FL (E.D.N.C.); *Walker v. Stonebridge Life Ins. Co.*, No. 3:13-cv-4189-B (N.D. Tex.) (collectively, including *Giercyk* and *Petruzzo*, the "Actions");

WHEREAS, the Class Representatives in the Actions make various claims, contentions, and allegations against the Defendants arising out of or relating to the Benefits Programs, including but not limited to the marketing, sale, regulatory approval, and administration of the Benefits Programs;

WHEREAS, the Parties (as defined in paragraph 1.29) have agreed that, subject to the provisions of paragraph 8.5(d), the Class Representatives will file a further amended complaint in

the United States District Court for the District of New Jersey asserting a nationwide class against all of the Defendants (the "Further Amended Complaint");

WHEREAS, the Parties engaged in numerous settlement discussions with the assistance of the Honorable John S. Martin (ret.) over an eighteen-month period;

WHEREAS, on May 3, 2016, the Parties entered into a Memorandum of Understanding;

WHEREAS, during discovery in the Actions, the Parties exchanged over 2 million pages of records, responded to over 500 interrogatories, took 17 depositions, and completed discovery in multiple Actions;

WHEREAS, the Defendants have vigorously denied and continue to deny any wrongdoing and any liability for the Released Claims (as defined in paragraph 1.31);

WHEREAS, the Parties have agreed to settle the claims in the Actions on the terms and conditions set forth in this Agreement;

WHEREAS, the Parties have agreed to enter into this Settlement (as defined in paragraph 1.32) because it provides substantial and meaningful benefits to the Class Members (as defined in paragraph 1.10) and to avoid the uncertainties and substantial expense, business disruption, and burden inherent in continued litigation; and

WHEREAS, entry into this Agreement is not an admission of liability by any of the Defendants;

NOW, THEREFORE, it is agreed, by and among the undersigned, intending to be legally bound, that the Actions shall be settled and dismissed with prejudice pursuant to the terms and conditions set forth herein, subject to judicial approval.

## I.     DEFINITIONS

1.1     "Adjusted Membership Fee" shall mean an amount calculated as the total amount of membership fees the class member paid for the Benefit Program between January 1, 2005 and

the date of preliminary approval plus 50% of all membership fees the class member paid for the Benefit Program prior to January 1, 2005.

      1.2     "Administration Costs" shall mean (i) the costs and expenses associated with the production and dissemination of the Long Form Notice (as defined in paragraph 1.27); (ii) the costs and expenses associated with the production and publication of the Published Notice (as defined in paragraph 2.6); (iii) all reasonable fees and costs incurred by the Settlement Administrator (as defined in paragraph 1.33) in administering and effectuating this Settlement, which costs and expenses are authorized or necessitated by performance and implementation of this Agreement and any Court orders relating thereto; and (iv) the costs and expenses associated with any other notices, mailings, publications, or processing of Claim Forms (as defined in paragraph 1.8) required under the terms of this Agreement or any court order.

      1.3     "Alliant Defendants" shall mean any or all of Alliant Insurance Services, Inc., Alliant Services Houston, Inc., and/or Alliant Insurance Services Houston, LLC.

      1.4     "Attorneys' Fees and Expenses" shall mean any and all attorneys' fees, costs (including expert costs) and expenses of Class Counsel (as defined in paragraph 1.9) for their past, present, and future work, efforts, and expenditures in connection with the Actions and this Settlement, including fees, costs, and expenses of any co-counsel, local counsel, experts, consultants, or other individuals retained by, or who assisted Class Counsel in connection with the Actions and this Settlement.

      1.5     "Benefits Programs" shall mean any benefits program or memberships offering *inter alia* any type of disability, dismemberment, casualty, emergency accident and sickness medical expense benefit (including but not limited to the emergency accident and sickness medical expense benefit underwritten by Virginia Surety Company, Inc.), or travel insurance,

marketed or administered directly or indirectly by the Catamaran Defendants or HealthExtras, LLC or that used the trade name "HealthExtras," including any such program endorsed by Christopher Reeve, and/or marketed or administered directly or indirectly by or through, *inter alia*, American Express Travel Related Services Company, Inc., J.C. Penny Life Insurance Company, Stonebridge Life Insurance Company, Amex Insurance Services, AMEX Assurance Company, AMZ Marketing, Inc., Associated Credit Card Services, Inc., Cambria Productions, Inc., Capital One Bank, Capital One, F.S.B., Capital One Services Inc., Citibank (South Dakota), N.A., Chase Manhattan Automotive Finance Corporation, Chase Manhattan Bank, Chase Manhattan Bank USA, N.A., Christopher or Dana Reeve, Crestar Insurance Agency, Inc., CUNA Mutual Insurance Agency, Inc., First Tennessee Insurance Services, First Union Mortgage Corporation, First Virginia Banks, Inc., Fleet Credit Card Services, L.P., Fleet Bank (RI), National Association, Fleet Credit Card Services, L.P., Fleet Credit Card Holdings, Inc., FNC Insurance Agency, Globe Life and Accident Insurance Company, J.C. Penny Direct Marketing Services, Inc., KeyBank National Association, Keycorp Insurance Agency USA, Inc., Keycorp Insurance Agency, Inc., KeyBank National Association, Mass Marketing Insurance Group, Inc., North American Affinity Clubs, Inc., Onvia.com, Inc., Protective Consumer Direct, Quotesmith.com Inc., Reliance Insurance Company, The Riggs National Bank of Washington, D.C., Sears Insurance Services, L.L.C., Stonebridge Life Insurance Company, SunTrust Insurance Services (Georgia), Inc., Sun Trust Insurance Services (Tennessee), Inc., SunTrust Insurance Services (Florida), Inc., USA Service Group, U$A Value Exchange L.P., or U$A Value Exchange Partnership, provided, however, that "Benefits Programs" shall not include benefits programs or memberships Class Members (as defined in paragraph 1.10) received as an employee of the Catamaran Defendants.

1.6     "Case Contribution Fee" shall have the meaning ascribed to it in paragraph 6.1.

1.7     "Catamaran Defendants" shall mean any or all of Catamaran Health Solutions, LLC, HealthExtras, Inc., Catalyst Health Solutions, Inc., HealthExtras Benefit Administrators, Inc. and/or HealthExtras Insurance Agency, Inc.

1.8     "Claim Form" shall mean the document in a form to be agreed to by the Parties and to be provided to and then returned by the Class Members pursuant to paragraph 2.5.

1.9     "Class Counsel" or "Plaintiffs' Counsel" shall mean each of Aughtman Law Firm, LLC, Golomb & Honik, P.C. and Hemmings & Stevens, P.L.L.C.

1.10    "Class Member(s)" shall mean any and/or all member(s) of the HealthExtras Settlement Class together with any and/or all member(s) of the Stonebridge Settlement Class.

1.11    "Class Representatives" or "Plaintiffs" shall mean the "Stonebridge Settlement Class Representatives" together with the "HealthExtras Settlement Class Representatives."

1.12    "Court" shall mean the United States District Court for the District of New Jersey.

1.13    "Defendants" shall mean National Union Fire Insurance Company of Pittsburgh, Pa., American International Group, Inc., AIG Group Insurance Trust, AIG Group Insurance Trust, For the Account of HealthExtras, Virginia Surety Company, Inc., Catamaran Health Solutions, LLC, HealthExtras, Inc., Catalyst Health Solutions, Inc., HealthExtras Insurance Agency, Inc., Alliant Insurance Services, Inc., Alliant Insurance Services Houston, LLC, and Alliant Services Houston, Inc.

1.14    "Defendants' Counsel" shall mean each of Sidley Austin LLP; Quarles & Brady LLP; Winston & Strawn, LLP; Aiken Gump Strauss Hauer & Feld LLP; and Parker Poe Adams & Bernstein LLP.

1.15    "Defendant Released Parties" shall mean each of (i) the National Union Defendants and their present, former, and future direct and indirect affiliates, agents, divisions, predecessors, parent companies, subsidiaries, members, and successors; (ii) the Catamaran Defendants and their present, former, and future direct and indirect affiliates, agents, divisions, predecessors, parent companies, subsidiaries, members, and successors; (iii) Virginia Surety and its present, former, and future direct and indirect affiliates, agents, divisions, predecessors, parent companies, subsidiaries, members, and successors; (iv) the Alliant Defendants and their present, former, and future direct and indirect affiliates, agents, divisions, predecessors, parent companies, subsidiaries, members, and successors, as well as JLT Insurance Services Corporation, JLT Services Corporation, Jardine Lloyd Thompson, LLC, Driver Alliant Insurance Services, Inc. and Capital Risk, LLC; (v) HealthExtras, LLC and its present, former, and future direct and indirect affiliates, agents, divisions, predecessors, parent companies, subsidiaries, members, and successors; (vi) any financial institution (including but not limited to the financial institutions identified in paragraph 1.5, above) through which the Benefits Programs were marketed together with their present, former, and future direct and indirect affiliates, agents, divisions, predecessors, parent companies, subsidiaries, members, and successors; and (vii) all of the aforementioneds' respective present, former, and future agents, assigns, attorneys, directors, employees, officers, members and shareholders, provided that, without limiting the foregoing, and subject to the Judgment Reduction provisions set forth in Section VII below, Plaintiffs specifically do not release any and all claims they may have against Stonebridge Life Insurance Company, Federal Insurance Company, J.C. Penny Life Insurance Company, J.C. Penny Direct Marketing Services, Inc., or Transamerica Financial Life Insurance Company, their present, former, and future direct and indirect affiliates, agents, assigns, attorneys, directors, employees,

officers, members and shareholders, divisions, predecessors, parent companies, subsidiaries, and successors.

1.16    "Distributable Settlement Amount" shall have the meaning ascribed to it in paragraph 3.2(a).

1.17    "Effective Date" shall mean the later of (i) the expiration of the time to appeal the Final Approval Order and Judgment (as defined in paragraph 1.23) with no appeal having been filed; or (ii) if such appeal is filed, the termination of such appeal on terms that affirm the Final Approval Order and Judgment or dismiss the appeal with no material modification to the Final Approval Order and Judgment, and the expiration of the time to obtain any further appellate review of the Final Approval Order and Judgment.

1.18    "Escrow Account" shall mean an account at Wilmington Trust that is established for the deposit of any amounts relating to the Settlement.

1.19    "Escrow Agent" shall mean the Settlement Administrator, or any other person or entity approved by the Court to act as escrow agent for any portion of the Settlement Amount (as defined in paragraph 1.34) deposited in or accruing in the Escrow Account pursuant to this Agreement.

1.20    "Fee and Expense Application" shall mean the petition, to be filed by Class Counsel, seeking approval of an award of Attorneys' Fees and Expenses.

1.21    "Final Approval Hearing" shall mean the hearing to be held before the Court pursuant to Federal Rule of Civil Procedure 23(e) to determine whether the Agreement should receive Final Approval (as defined in paragraph 1.22) by the Court.    The Parties will request that the Final Approval Hearing be scheduled for a date no earlier than 110 days after the entry of the Preliminary Approval Order (as defined in paragraph 1.30).

1.22    "Final Approval" shall mean the entry of the Final Approval Order and Judgment.

1.23    "Final Approval Order and Judgment" or "Final Approval Order" shall mean a final order in a form to be agreed to by the Parties and entered by the Court after the Final Approval Hearing granting its approval of the Settlement.

1.24    "HealthExtras Settlement Class" shall mean any individuals who paid for or received any benefits or memberships from or relating to any Benefits Program for which any insurance coverage was underwritten by National Union Fire Insurance Company of Pittsburgh, Pa., Federal Insurance Company, Reliance National Insurance Company, Zurich American Insurance Company, or AMEX Assurance Company.

1.25    "HealthExtras Settlement Class Representatives" are those individuals that represent the HealthExtras Settlement Class and shall mean Stephen Giercyk, Ajay Das, Rita Campbell, Mario Petruzzo, Ralph Williams, Manette DuBuisson, Jayantilal Patel, Virginia Riker, Jeffrey and Kimberly Bush, Arie Waiserman, Robert and Maria Watson, Larry and Linda Lake, Christine Hine, Dagmar Durcik, and Thomas and Kim Broome.

1.26    "HealthExtras, LLC" shall mean HealthExtras, LLC, the bankruptcy estate of HealthExtras, LLC, and/or any trustee for the bankruptcy estate of HealthExtras, LLC.

1.27    "Long Form Notice" shall mean the notice, in a form to be agreed to by the parties, to be made available to the Class Members on the Settlement Website (as defined in paragraph 1.37).

1.28    "National Union Defendants" shall mean any or all of National Union Fire Insurance Company of Pittsburgh, Pa., American International Group, Inc., AIG Group Insurance Trust, and/or AIG Group Insurance Trust, For the Account of HealthExtras.

1.29    "Parties" shall mean the Class Representatives, the HealthExtras Settlement Class, the Stonebridge Settlement Class, and the Defendants.

1.30    "Preliminary Approval Order" shall mean an order in a form to be agreed to by the Parties and entered by the Court preliminarily approving the Settlement.

1.31    "Released Claims" shall mean any and all rights, duties, obligations, allegations, contentions, claims, actions, causes of action, debts, or liabilities, whether arising under local, state, or federal law, whether by statute, regulation, contract, common law, or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, or liquidated or unliquidated that arise out of or relate in any way to (i) allegations, claims, or contentions that were or could have been asserted in the Actions; (ii) the Benefits Programs, including, but not limited to the advertising, marketing, pricing, underwriting, termination, administration, regulation, approval, licensing, coverage, benefits, ownership, control, or group status of the Benefits Programs and/or the payment or nonpayment of any claims submitted thereunder; (iii) the insurance provided in connection with the Benefits Programs, including but not limited to its regulatory compliance, enforceability, administration, scope of coverage, premiums, or loss ratios; or (iv) any other obligations owed by any Defendant to any Class Member as a direct or indirect result of the Class Member's enrollment in the Benefits Programs and/or any benefit provided to any Class Member as a result of their enrollment in the Benefits Programs.

1.32    "Settlement" shall mean the compromise and Settlement embodied in this Settlement Agreement.

1.33    "Settlement Administrator" shall mean Heffler Claims Group.

1.34    "Settlement Amount" is $15,000,000.

1.35    "Settlement Classes" shall mean the HealthExtras Settlement Class and the Stonebridge Settlement Class.

1.36    "Settlement Telephone Number" shall have the meaning ascribed to it in paragraph 2.9.

1.37    "Settlement Website" shall have the meaning ascribed to it in paragraph 2.8

1.38    "Stonebridge Settlement Class" shall mean any individuals who paid for or received any benefits or memberships from or relating to any Benefits Program for which any insurance coverage was underwritten by J.C. Penny Life Insurance Company, or Stonebridge Life Insurance Company.

1.39    "Stonebridge Settlement Class Representatives" are those individuals that represent the Stonebridge Settlement Class and shall mean Alice Lacks, Kenneth Graham, Sharen Smith, James and Emma Imes, Danny and Tracy Walker, and Deborah and Paul Johnson.

1.40    "Taxes" shall mean taxes on the income of the Escrow Account.

1.41    "Tax-Related Costs" shall mean any and all expenses and costs incurred in connection with the taxation of the Escrow Account, including, without limitation, expenses of tax attorneys and accountants.

1.42    "Virginia Surety" shall mean Virginia Surety Company, Inc.

Additional terms defined elsewhere herein shall have the meanings stated, irrespective of whether such terms are included in this Definitions section.

## II.    MOTION FOR PRELIMINARY APPROVAL AND CERTIFICATION OF PROPOSED CLASSES FOR SETTLEMENT PURPOSES

2.1    *Motion for Preliminary Approval and Certification of Settlement Classes*. As soon as is practicable after execution of this Agreement, Plaintiffs shall move the Court (i) for preliminary approval of the Settlement, including entry of an order in a form to be agreed to by

the Parties, and (ii) for purposes of this Settlement only, conditional certification of the Settlement Classes.

2.2     ***Basis for Certification of Settlement Classes***. Plaintiffs will seek certification of the Settlement Classes under Rule 23(b)(3).

2.3     ***Certification for Settlement Purposes Only***. Defendants agree not to oppose the certification of the Settlement Classes for the limited purpose of effectuating this Agreement. Defendants reserve all rights to object to the propriety of class certification in the Actions in all other contexts and for all other purposes.   The fact that Defendants have not opposed certification of the Settlement Classes shall not be used against Defendants by any party or nonparty for any purpose in this or any other Actions, lawsuits, or proceedings of any kind whatsoever.

2.4     ***Vacating Settlement Certification and Reservation of Rights***. The certification of the Settlement Classes shall be binding only with respect to the Settlement of the Actions.   If this Agreement is terminated, the Settlement's approval is reversed, vacated, or modified in any material respect by the Court or any other court, or the Settlement does not receive Final Approval, the certification of the HealthExtras Settlement Class and the Stonebridge Settlement Class shall be vacated, the Actions shall proceed as though the HealthExtras Settlement Class and the Stonebridge Settlement Class had never been certified, and no reference to the prior Settlement Classes or any documents related thereto shall be made for any purpose.

2.5     ***Long Form Notice and Instruction Form***.

(a)     Within thirty (30) days of the entry of the Preliminary Approval Order, the Settlement Administrator shall make the Long Form Notice and the Claim Form available to the Class Members on the Settlement Website.   Commencing thirty (30) days after the entry of the

Preliminary Approval Order and concluding no later than sixty (60) days from the entry of the Preliminary Approval Order, the Settlement Administrator shall send to all of the Class Members by first-class mail a postcard notice (the "Postcard Notice"), in a form to be agreed to by the Parties.   The Postcard Notice shall be sent to the last known mailing address of the Class Members and updated through the National Change of Address database by the Settlement Administrator.

(b)     The Claim Form must be returned by each Class Member to the Settlement Administrator by midnight, at least thirty-five (35) days before the Final Approval Hearing set by the Court.

(c)     The Settlement Administrator will make payment of the Distributable Settlement Amount to each Class Member in the form of a check made payable to the Class Member.

2.6     ***Published Notice.*** Within thirty (30) days of the first mailing of the Postcard Notice, the Settlement Administrator shall also cause to be published in a national publication notice of the settlement in a form to be agreed to by the Parties that provides the general details of the Settlement Agreement and directs Class Members to the Settlement Website (the "Published Notice"), where the Long Form Notice and the Settlement Agreement and its exhibits all will be available.

2.7     ***Class Action Fairness Act Notice***. Defendants shall comply with the notice requirements of 28 U.S.C. § 1715 and shall file with the Court an appropriate notice confirming compliance prior to the Final Approval Hearing.

2.8     ***Settlement Website***. Within thirty (30) days of the entry of the Preliminary Approval Order, the Settlement Administrator shall establish the Settlement Website, which shall contain the Long Form Notice, this Agreement and its exhibits.   The Long Form Notice and the

Published Notice shall identify the web address of the Settlement Website.   The Settlement Website also will contain an electronic version of the Claim Form that can be downloaded or printed by the Class Members and submitted online through the Settlement Website or returned via U.S. Mail.

2.9     ***Settlement Telephone Number***.   Within thirty (30) days of the entry of the Preliminary Approval Order, the Settlement Administrator shall establish and maintain an automated, toll-free telephone line for Settlement Class Members to call and get answers to Settlement-related inquiries.   The Settlement Telephone Number will be provided to Settlement Class Members in the Postcard Notice, the Long Form Notice and on the Settlement Website.

2.10     ***Rights of Exclusion***.   The Long Form Notice shall include a procedure for HealthExtras Settlement Class Members and Stonebridge Settlement Class Members to opt out of their respective Settlement Class by filing an opt-out notice at least thirty-five (35) days before the Final Approval Hearing set by the Court.   Any Class Member who does not timely and validly request to opt out shall be bound by the terms of this Agreement.

2.11     ***Right to Object***. The Long Form Notice also shall include a procedure for HealthExtras Settlement Class Members and Stonebridge Settlement Class Members to object to the Settlement by filing an objection at least thirty-five (35) days before the Final Approval Hearing set by the Court.   Each objection must be mailed to the Clerk of the Court and Class Counsel and include the following:

(a)     The name of this Action;

(b)     The objector's full name, address and telephone number;

(c)     A complete explanation of the basis upon which the objector claims to be a Class Member;

(d)      All grounds for the objection, accompanied by any and all legal or factual support for the objection known to the objector or his counsel;

(e)      The identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement or fee application and all legal or factual support for such fees;

(f)      The identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing;

(g)      A statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

(h)      The objector's signature (an attorney's signature shall not be deemed sufficient to satisfy this requirement).

## III.      PAYMENTS TO THE CLASSES.

### 3.1      *The Settlement Amount.*

(a)      Defendants shall cause the portion of the Settlement Amount that each one has agreed to pay to be deposited by wire transfer into the Escrow Account within thirty (30) days of entry of the Preliminary Approval Order.   In the event that any Defendant fails to deposit its portion of the Settlement Amount, the Defendants shall, within ten (10) calendar days, inform Class Counsel of the non-performing Defendant's failure to deposit such funds, disclose the share of the Settlement Amount that the non-performing Defendant was supposed to deposit, disclose how much each performing Defendant in fact deposited, and make reasonable good faith efforts to cooperate with the Plaintiffs in any attempt by the Plaintiffs to recover the Settlement Amount due from the non-performing Defendant.   No other Defendant shall be jointly or severally liable for the non-performing Defendant's share of the Settlement Amount.

(1)     In the event that any Administrative Costs arise before the date on which the Settlement Amount is to be deposited in the Escrow Account as provided in ¶ 3.1 (a) above, Class Counsel shall pay the Administrative Costs and seek reimbursement from the Escrow Agent after the Escrow Account has been funded.

(2)     The Settlement Amount shall be used solely for the purposes set forth in paragraph 3.1(h) below.

(3)     Within fourteen (14) days after the Settlement Amount has been deposited into the Escrow Account, $200,000 of the Settlement Amount shall be made available to the Settlement Administrator to cover Administration Costs incurred prior to Final Approval.

(b)     Subject to Court approval and oversight, the Escrow Account will be controlled by the Settlement Administrator.   Neither Plaintiffs nor Defendants shall have any liability whatsoever for any act or omission of the Settlement Administrator appointed by the Court. The Settlement Administrator shall not disburse the Settlement Amount or any portion thereof except as provided for in this Agreement, by an Order of the Court, or with prior written agreement of Class Counsel and each one of Defendant's Counsel.

(c)     The Settlement Administrator is authorized to execute transactions on behalf of the Parties and the Settlement Classes that are consistent with the terms of this Agreement and with Orders of the Court.

(d)     All funds held in the Escrow Account shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until the funds are distributed in accordance with this Agreement.

(e)     The Escrow Account shall be an interest bearing account, which shall promptly be identified to the Parties at any Party's request by account number and any other identifying

information.    Neither the Settlement Amount, nor any portion thereof, shall be commingled with any other monies.    Class Members shall bear all risks related to investment of the Settlement Amount, including but not limited to any risks of uninsured default, insolvency, fraud, theft, or illiquidity of or by the financial institution at which the Escrow Account is maintained.

(f)    The Escrow Account is intended to be a "Qualified Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1 and any analogous local, state and/or foreign statute, law, rule, or regulation.    The Settlement Administrator, as administrator of the Qualified Settlement Fund within the meaning of Treasury Regulation §1.468B-2(k)(3), shall be solely responsible for filing tax returns for the Escrow Account and paying from the Escrow Account any Taxes owed with respect to the Escrow Account. Defendants agree to provide the Settlement Administrator with the statement described in Treasury Regulation §1.468B-3(e).    Neither Defendants, Defendants' Counsel, Plaintiffs, nor Class Counsel shall have any liability or responsibility of any sort for filing any tax returns or paying any taxes with respect to the Escrow Account.

(g)    All Taxes and Tax-Related Costs shall be timely paid by the Settlement Administrator out of the Escrow Account.

(h)    The Settlement Amount, together with any interest accrued thereon, will be used to pay the following amounts associated with the Settlement:

(1)    Compensation to Class Members determined in accordance with paragraph 3.2;

(2)    Any Case Contribution Fee approved by the Court;

(3)    All Attorneys' Fees and Expenses approved by the Court;

(4)      Administration Costs; and

(5)      Taxes and Tax-Related Costs

(i)      Class Members who fail to timely submit a properly completed Claim Form shall have no right to receive any payment from the Settlement Amount.

3.2    ***Distribution to Class Members***.

(a)      All monies remaining from the Settlement Amount, including any accrued interest thereon, after the payment of any approved Case Contribution Fee, approved Attorneys' Fees and Expenses, Administrative Costs, Taxes, and Tax-Related Costs, shall be available for distribution to the Class Members (the "Distributable Settlement Amount").

(b)      The Distributable Settlement Amount shall be divided among the Class Members who submit Claim Forms, according to the following formula:

(1)      75% of the Distributable Settlement Amount shall be distributed to members of the HealthExtras Settlement Class pro rata, based on each HealthExtras Settlement Class Member's Adjusted Membership Fee.   The Adjusted Membership Fee paid shall be determined via the records maintained in the AS/400 database, which served as the system of record for the Benefits Programs as administered by HealthExtras, LLC.

(2)      25% of the Distributable Settlement Amount shall be distributed to members of the Stonebridge Settlement Class pro rata, based on the number of years that each Stonebridge Settlement Class Member was enrolled in the Benefits Program.   The number of years of enrollment shall be determined via the records maintained in the AS/400 database, which served as the system of record for the Benefits Programs, as administered by HealthExtras LLC.

(c)      The Parties acknowledge that while the data upon which the allocations described in paragraph 3.2 of this Agreement shall be based may contain inaccuracies, inconsistencies, or be incomplete, it represents the best enrollment and membership fee data currently available to the Parties.

(d)      The Settlement Administrator shall be solely responsible for mailing checks to Class Members for their share of the Distributable Settlement Amount within sixty (60) days of the Effective Date.

(e)      All of the payments described above shall be made on a "per account" basis.   If more than one individual is insured under a single account, the Settlement Administrator shall make the check payable jointly to every individual listed on the account.

(f)      Class Members must cash checks within ninety (90) days of issuance.   If any Class Member does not do so, his or her check will be void.   This limitation shall be printed on the face of each check.   The voidance of checks shall have no effect on the Class Members' release of claims, obligations, representations, or warranties as provided herein, which shall remain in full effect.

3.3      ***Treatment of Undistributed Funds and Uncashed Checks***.   Any monies attributable to uncashed or returned checks sent by the Settlement Administrator shall remain in the Escrow Account for at least six (6) months from the date that the first check is mailed by the Settlement Administrator.   During this time period, the Settlement Administrator shall make a reasonable effort to locate intended recipients of the checks that were returned and to effectuate delivery of such checks.   Any monies that cannot be distributed to Class Members for any reason, and any other portion of the Settlement Amount remaining after all of the payments described in paragraphs 3.1, 3.2, and 3.3 have been completed, together with any undistributed

interest earned by the Escrow Account, shall be donated in equal shares to:    (a) The Buoniconti Fund to Cure Paralysis; (b) American Spinal Injury Association; (c) Paralyzed Veterans of America; and (d) Spinal Cord Opportunities for Rehabilitation Endowment pursuant to a *cy pres* award of the Court.    As soon as practicable following the Effective Date, the Parties shall make any application for a *cy pres* award of any such funds to the Court.    Any monies owed to the Settlement Administrator in connection with the Settlement shall be paid in full prior to any donation to the agreed to *cy pres* award recipients.

3.4    ***Administration Costs***. The Administration Costs shall be paid from the Settlement Amount.    Beginning forty-five (45) days after the entry of the Preliminary Approval Order, and every thirty (30) days thereafter, the Settlement Administrator shall provide the Parties with a detailed accounting of any Administrative Costs expended to date and an invoice for the amount of such Administration Costs.    Any disputes as to whether amounts billed by the Settlement Administrator are reasonable and necessary under this Agreement shall be resolved by the Court.

3.5    ***Entire Monetary Obligation***. Notwithstanding anything else in this Agreement, Defendants shall in no event be required to pay any amounts other than the Settlement Amount. It is understood and agreed that Defendants' monetary obligations under this Settlement Agreement will be fully discharged by paying the amount specified in paragraphs 1.34 and 3.1(a) above, and that Defendants shall have no other monetary obligations, or obligations to make any other payments under this Agreement or otherwise.

## IV.    SETTLEMENT ADMINISTRATION

4.1    The Settlement Administrator shall administer the Settlement subject to the supervision of Class Counsel, Defendants' Counsel, and the Court as circumstances may require.

4.2     Defendants and Defendants' Counsel shall have no responsibility for, interest in, or liability whatsoever, with respect to:

(a)     any act, omission or determination of the Settlement Administrator, Plaintiffs' Counsel or designees or agents of Plaintiffs' Counsel or the Settlement Administrator;

(b)     any act, omission or determination of Plaintiffs' Counsel or their designees or agents in connection with the administration of the Settlement;

(c)     the management, investment, or distribution of the Settlement Amount or the Distributable Settlement Amount; or

(d)     the determination, administration, calculation, or payment of any claims asserted against the Settlement Amount or the Distributable Settlement Amount.

4.3     The Settlement Administrator shall provide such information as may be reasonably requested by Plaintiffs or Defendants relating to administration of this Agreement, including but not limited to providing written notice no less than three (3) business days prior to any disbursements from the Escrow Account in excess of $100,000.

## V.     RELEASES, COVENANTS AND JUDICIAL FINDINGS

5.1     *Class Member Releases*. Upon the Effective Date, the HealthExtras Settlement Class, the Stonebridge Settlement Class, and the Class Representatives, on behalf of themselves, their present and former spouse(s), as well as present, former and future respective administrators, agents, assigns, attorneys, executors, heirs, partners, predecessors-in-interest, successors-in-interest, and beneficiaries, shall be deemed to have, and by operation of the Final Order and Judgment shall have, fully, finally, and forever released, relinquished and discharged, and shall be forever enjoined from the prosecution of, each and every Released Claim (including unknown claims), whether arising before or after the date of the Final Order and Judgment, against any and all of Defendant Released Parties (as defined in paragraph 1.15, above, which

definition, for the avoidance of doubt, confirms that without limiting the foregoing and subject to the Judgment Reduction provisions set forth in Section VII below, the Plaintiffs specifically do not release any and all claims they may have against Stonebridge Life Insurance Company, Federal Insurance Company, J.C. Penny Life Insurance Company, J.C. Penny Direct Marketing Services, Inc., or Transamerica Financial Life Insurance Company, their present, former, and future direct and indirect affiliates, agents, assigns, attorneys, directors, employees, officers, members and shareholders, divisions, predecessors, parent companies, subsidiaries, and successors).

   5.2   ***Defendant Releases***.   Upon the Effective Date, the Defendant Released Parties, fully, finally, and forever release, relinquish and discharge each and every claim that they have or may have against one another, including but not limited to claims for indemnity or contribution arising out of or related in any way to the subject matter of the Released Claims, the Benefit Programs, the Actions, or the claims that were or could have been asserted in such Actions, provided that nothing herein is intended to or shall be deemed to constitute a release of any claims that any of the Defendant Released Parties may have against any of their insurers for insurance coverage under any insurance policy issued by an insurer to a Defendant Released Party.

   5.3   ***HealthExtras, LLC Release***.   The Defendants shall secure a form of acceptable release from HealthExtras, LLC consistent with paragraph 5.1 above pursuant to Federal Rule of Bankruptcy Procedure 9019 in the bankruptcy action styled *In Re: HealthExtras, LLC*, No. 15-10368 (D. Md. Bankr.) (the "9019 Order").   If within fourteen (14) days prior to the Final Approval Hearing, a final, non-appealable 9019 Order does not yet exist, Defendants may, in their discretion, file a motion with the Court requesting that the entry of the Final Approval

Order and Judgment be deferred until after the bankruptcy court has approved the 9019 Order

and such order becomes final with no further appeals permitted.   Plaintiffs agree not to oppose

such motion.

     5.4    **_Releases of Unknown Claims_**.   The Parties acknowledge that they may have

claims that are currently unknown and that the releases in this Agreement are intended to and

will fully, finally, and forever discharge all claims released herein, whether now asserted or

unasserted, known or unknown, suspected or unsuspected, which now exist, or heretofore existed

or may hereafter exist that could have been asserted in the Actions, which if known, might have

affected their decision to enter into this release.   Each Party shall be deemed to waive any and

all provisions, rights, and benefits conferred by any law of the United States, any state or

territory of the United States, or any state or territory of any other country, or principle of

common law or equity, which governs or limits a person's release of unknown claims, provided

that, without limiting the foregoing, the Parties specifically do not release any unknown claims

they may have against Stonebridge Life Insurance Company, Federal Insurance Company, J.C.

Penny Life Insurance Company, J.C. Penny Direct Marketing Services, Inc., or Transamerica

Financial Life Insurance Company, their present, former, and future direct and indirect affiliates,

agents, assigns, attorneys, directors, employees, officers, members and shareholders, divisions,

predecessors, parent companies, subsidiaries, and successors.   In making this waiver, the Parties

understand and acknowledge that they may hereafter discover facts in addition to or different

from those that are currently known or believed to be true with respect to the subject matter of

these releases, but agree that they have taken that possibility into account in reaching this

Agreement and that, notwithstanding the discovery or existence of any such additional or

different facts, as to which the Parties expressly assume the risk, they fully, finally, and forever

settle and release any and all Released Claims, known or unknown, suspected or unsuspected, which now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery or existence of such additional or different facts.   The foregoing waiver includes, without limitation, an express waiver, to the fullest extent not prohibited by law, by Plaintiffs, the Class Members, and all Parties, of any and all rights under California Civil Code Section 1542, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH, IF KNOWN BY HIM OR HER, MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR**.

In addition, Plaintiffs, Class Members, and all Parties also expressly waive any and all provisions, rights, and benefits conferred by any law or principle of common law or equity, that are similar, comparable, or equivalent, in whole or in part, to California Civil Code Section 1542.

5.5     ***Representation of Capacity to Settle; Indemnification of Attorneys' Fees and Expenses for Breach of Release***.   Each Class Representative hereby represents and warrants that as of the Effective Date, they have the authority to settle the Released Claims on the Class Representative's own behalf and to thereby extinguish the Released Claims.   Each Class Representative acknowledges that the Defendants are relying on such Class Representative's representations and warranties in entering into this Agreement.   If a Class Representative, or the beneficiary or creditor of a Class Representative, brings a claim or action that is determined to encompass a Released Claim, that Class Representative shall indemnify Defendants for any damages awarded and any attorneys' fees, expenses, or other costs incurred by them in defending any such action.

**VI.     MONETARY PAYMENTS**

6.1     The Class Representatives intend to seek a Case Contribution Fee not to exceed the

amount of $4,000 per HealthExtras Settlement Class Representative and $2,500 per Stonebridge

Settlement Class Representative OR $85,000 cumulatively (the "Case Contribution Fee").

Defendants shall not oppose a Case Contribution Fee up to that amount.   Any Case Contribution

Fee approved by the Court shall be paid by the Settlement Administrator to Class Counsel within

thirty (30) days of the Effective Date.   The Case Contribution Fee shall be paid by the Settlement

Administrator solely out of the Settlement Amount and shall be deducted (to the extent approved

by the Court) from the Settlement Amount on or after the Effective Date and prior to the

distribution to the Class Members.   Class Counsel shall bear the sole responsibility for

distributing the Case Contribution Fee to the Class Representatives.   The Parties agree that the

Court's failure to approve, in whole or in part, the Class Representatives' Case Contribution Fee

shall not prevent the Settlement Agreement from becoming Effective, nor shall it be grounds for

termination.   In the event that the Court fails to approve Class Representatives' Case Contribution

Fee, the Settlement Amount shall not be distributed until after the later of (i) the expiration of the

time to appeal the order failing to approve the Class Representatives' Case Contribution Fee; or (ii)

if such appeal is filed, the termination of such appeal, and the expiration of the time to obtain any

further appellate review.

6.2     Class Counsel intends to submit a Fee and Expense Application, seeking an award

based on the value of the Settlement and the work performed in an amount not to exceed five

million dollars ($5,000,000), plus costs and expenses.   Defendants shall not oppose Class

Counsel's Fee and Expense Application up to this amount.   Any amount awarded by the Court in

response to such Fee and Expense Application shall be paid by the Settlement Administrator

within thirty (30) days of the Effective Date solely out of the Settlement Amount and shall be

deducted (to the extent approved by the Court) from the Settlement Amount on or after the

Effective Date and prior to the distribution to the Class Members.   The Parties agree that the

Court's failure to approve, in whole or in part, Class Counsel's Fee and Expense Application shall

not prevent the Settlement Agreement from becoming Effective, nor shall it be grounds for

termination.   In the event that the Court fails to approve Class Counsel's Fee and Expense

Application, the Settlement Amount shall not be distributed until after the later of (i) the expiration

of the time to appeal the order failing to approve Class Counsel's Fee and Expense Application; or

(ii) if such appeal is filed, the termination of such appeal, and the expiration of the time to obtain

any further appellate review.

Class Counsel shall determine the appropriate allocation of attorneys' fees and expenses

among themselves, co-counsel, and local counsel, in their collective judgment and discretion,

based on the expenses incurred and the contributions of counsel.

## VII.   JUDGMENT REDUCTION

7.1      In the event that the Class Members, or any of them, obtain a judgment, award,

recovery, or settlement on any claim against any person or entity not included in the Defendant

Released Parties (a "Non-Settling Party"), including, but not limited to Federal Insurance

Company, J.C. Penny Life Insurance Company, J.C. Penny Direct Marketing Services, Inc.,

Transamerica Financial Life Insurance Company or Stonebridge Life Insurance Company that

directly or indirectly arises out of or relates to the Benefits Programs (including, but not limited

to (i) the marketing, pricing, termination, administration, regulation, approval, or licensing of the

Benefits Programs and/or the payment or nonpayment of any claims submitted thereunder; (ii)

the insurance provided in connection with the Benefits Programs, including but not limited to its

regulatory compliance, enforceability, administration, scope of coverage, premiums, or loss

ratios; (iii) any other obligations owed to any Class Member as a direct or indirect result of the

Class Member's enrollment in the Benefits Programs and/or any benefit provided to any Class Member as a result of their enrollment in the Benefits Programs); or (iv) the Actions or the claims asserted therein, the Class Member(s) shall voluntarily reduce, and the Non-Settling Party shall be entitled to a reduction of, any such judgment, award, recovery, settlement or other form of monetary relief against such Non-Settling Party by the "Judgment Reduction Amount."   The "Judgment Reduction Amount" is the amount necessary under applicable law to extinguish, discharge, satisfy or otherwise preclude any and every "Contribution Claim" (defined below) that the Non-Settling Party now is, hereafter will be, or but for the "Bar Order" (defined below) otherwise would be entitled to bring against the Defendant Released Parties, or any of them, and includes, without limitation, an amount equal to the aggregate proportionate shares of liability, if any, of the Defendant Released Parties, or any of them, for the Released Claims.   "Contribution Claim" shall mean and include any claim for subrogation, contribution or indemnification (whether equitable, contractual or otherwise) arising out of or relating to the Benefits Programs (including, but not limited to (i) the marketing, pricing, termination, administration, regulation, approval, or licensing of the Benefits Programs and/or the payment or nonpayment of any claims submitted thereunder; (ii) the insurance provided in connection with the Benefits Programs, including but not limited to its regulatory compliance, enforceability, administration, scope of coverage, premiums, or loss ratios; (iii) any other obligations owed to any Class Member as a direct or indirect result of the Class Member's enrollment in the Benefits Programs and/or any benefit provided to any Class Member as a result of their enrollment in the Benefits Programs); or (iv) the Actions or the claims asserted therein, as well as any claim, however denominated and regardless of the allegations, facts, law, theories, or principles on which it is based, in connection with which the injury the Non-Settling Party alleges having suffered includes the Non-Settling

Party's actual or threatened liability to the Class Members, or any of them, or any amounts paid

as judgment or in settlement of such actual or threatened liability, or any other costs or expenses

(including necessary attorneys' fees) incurred in connection with claims threatened or asserted

by Class Members.   The Judgment Reduction amount shall be determined by the court at the

time of entry of any judgment or award against the Non-Settling Party, or at the time of any

settlement between the Non-Settling Party and the Class Members, or any of them.

      7.2     In connection with Plaintiffs' motion for preliminary and final approval of the

Settlement, the Parties shall contemporaneously move the Court to enter an Order (the "Bar

Order," attached hereto) providing that any Non-Settling Party, including but not limited to

Federal Insurance Company, J.C. Penny Life Insurance Company, J.C. Penny Direct Marketing

Services, Inc., and Stonebridge Life Insurance Company, is hereby permanently barred, enjoined

and restrained from commencing, prosecuting, or asserting any Contribution Claim against the

Defendant Released Parties, or any of them, and that any such Contribution Claim that now

exists or has accrued or in the future may exist or accrue is extinguished, discharged, satisfied,

and/or otherwise unenforceable.

      7.3     The Class Members, or any of them, shall use reasonable measures to minimize

the possibility of and/or mitigate the value of any claim by any Non-Settling Party against the

Defendant Released Parties, or any of them.    In furtherance of this obligation, if the Class

Members settle any claim with any Non-Settling Party that directly or indirectly arises out of or

relates to the Benefits Programs (including, but not limited to (i) the marketing, pricing,

termination, administration, regulation, approval, or licensing of the Benefits Programs and/or

the payment or nonpayment of any claims submitted thereunder; (ii) the insurance provided in

connection with the Benefits Programs, including but not limited to its regulatory compliance,

enforceability, administration, scope of coverage, premiums, or loss ratios; or (iii) any other currently-unperformed obligations owed to any Class Member as a direct or indirect result of the Class Member's enrollment in the Benefits Programs and/or any benefit provided to any Class Member as a result of their enrollment in the Benefits Programs), the Actions or the claims asserted therein, the Class Member(s) shall use reasonable efforts to obtain from such Non-Settling Party an agreement to waive or release any and all claims that the Non-Settling Party may have against the Defendant Released Parties, or any of them.

## VIII.  CONTINGENCIES, EFFECT OF DISAPPROVAL OR TERMINATION OF SETTLEMENT

8.1     If the Court or, in the event of an appeal, any appellate court refuses to approve, or modifies any material aspect of this Agreement or the proposed Preliminary Approval Order or Final Approval Order and Judgment, including but not limited to any judicial findings included therein, Class Representatives or Defendants may terminate this Agreement and the Settlement as set forth below.

8.2     This Agreement and the Settlement shall terminate and be cancelled if, within ten (10) business days after any of the following events, any of the Parties provides written notification of an election to terminate the Settlement:

(a)     The Court declines to provide preliminary approval of this Agreement, or declines to enter or materially modifies the contents of the Preliminary Approval Order in the form agreed to by the Parties, or the Preliminary Approval Order is vacated, reversed or modified in any material respect on any appeal or other review or in a collateral proceeding occurring prior to the Effective Date;

(b)     The Court declines to provide final approval of this Agreement, or declines to enter or materially modifies the contents of the Final Approval Order and Judgment in the form agreed to by the Parties;

(c)     The Court's Final Approval Order and Judgment is vacated, reversed or modified in any material respect on any appeal or other review or in a collateral proceeding occurring prior to the Effective Date;

(d)     The Effective Date does not occur for some other reason;

(e)     The Court refuses to certify either the HealthExtras Settlement Class or the Stonebridge Settlement Class and/or materially modifies the definition of either such class.   For the avoidance of doubt, any change that results in any individuals who were previously included in the definition of the HealthExtras Settlement Class or the Stonebridge Settlement Class being excluded from the definition of the HealthExtras Settlement Class or the Stonebridge Settlement Class shall be deemed to materially modify the definition of such class;

(f)     The bankruptcy court *In Re: HealthExtras, LLC*, No. 15-10368 (D. Md. Bankr.) declines to enter the 9019 Order or such order is vacated, reversed, or modified in any material respect on any appeal or other review.

The Parties acknowledge and agree, without limitation, that any modification to the definitions of the Settlement Classes, the scope of the release, Defendants' financial obligations, and the Judgment Reduction provisions (but not including the Bar Order) set forth herein shall be deemed a material modification constituting grounds for cancellation or termination of the Agreement and the Settlement.

8.3     This Agreement and the Settlement shall terminate and be cancelled if (a) Class Members representing five percent (5%) or more of the total number of members of either the

Stonebridge Settlement Class or the HealthExtras Settlement Class opt out of the Settlement; and, (b) within ten (10) business days after receiving written notice from the Settlement Administrator of such opt-outs, any Defendant provides written notification of its election to terminate the Settlement.   Within five (5) days after the deadline for Class Members to opt out, the Settlement Administrator shall provide written notice to the Parties identifying all Class Members who have opted out of the Settlement and the separate percentages of the respective Settlement Classes they represent.

8.4     This Agreement and the Settlement shall terminate and be cancelled if (a) any federal or state authorities object to or require material modifications to the Agreement; and (b) within ten (10) business days after the deadline set in the Preliminary Approval Order for such objections, or within ten (10) business days of receiving any such objection, if later, any Defendant provides written notice of its election to terminate the Settlement.

8.5     If for any reason this Agreement is terminated or fails to become effective, then:

(a)     The Settling Parties shall be deemed to have reverted to their respective status in the Actions as of May 3, 2016.   The Parties shall proceed in all respects as if this Agreement and any related orders had not been entered.

(b)     Within ten (10) business days after the Agreement is terminated or fails to become effective, the Escrow Agent shall return the balance of the Escrow Account, including any interest, to the Defendants in accordance with written instructions jointly provided by all the Defendants.

(c) This Section VIII and its provisions, as well as Section IX below shall survive any termination of the Agreement and Settlement.

(d)    The Settling Parties agree that Virginia Surety and the Alliant Defendants, although parties to this Agreement, are not currently parties to *Giercyk*.    For the sole purpose of achieving final resolution of the Plaintiffs' claims through settlement on a nationwide basis, Plaintiffs agree that, in connection with their motion for preliminary approval of the Settlement, Plaintiffs will also concurrently file (or, if necessary, seek leave to file) the Further Amended Complaint in *Giercyk* adding Virginia Surety and Alliant as parties to that action.    In the event this Agreement is terminated or fails to become effective for any reason, the Plaintiffs and Defendants agree, within five (5) business days of the termination of this Agreement or any Order denying approval, to file with the Court a stipulation of voluntary dismissal with prejudice of the action, and all claims and allegations asserted therein, as to Virginia Surety and the Alliant Defendants.

## IX.    NO ADMISSION OF WRONGDOING

9.1    Defendants vigorously denied, and continue to deny, all of the allegations of wrongdoing in each of the Actions, and have vigorously denied and continue to deny all allegations of wrongdoing or liability whatsoever with respect to the Released Claims, including any and all claims of wrongdoing or liability alleged or asserted in the Actions.    This Agreement, and any of its terms, any agreement or order relating thereto, and any payment or consideration provided for herein, are not and shall not be construed as an admission by Defendants or any of the Defendant Released Parties of any fault, wrongdoing, or liability whatsoever.    Defendants are agreeing to this Settlement solely to eliminate the substantial burden, expenses and uncertainties of further litigation and the concomitant distraction of resources and efforts from their respective businesses.    This Agreement, and any of its terms, and any agreement or order relating thereto, shall not be offered by any person or entity to be received in evidence in any civil, criminal, administrative, or other proceeding, or utilized in any

manner as a presumption, a concession, or an admission of any fault, wrongdoing, or liability on the part of any Defendant.    However, nothing contained in this paragraph shall prevent this Agreement (or any agreement or order relating thereto) from being used, offered, or received in evidence in any proceeding to approve, enforce, or otherwise effectuate the Settlement (or any agreement or order relating thereto) or the Final Approval Order and Judgment.    This Agreement may be filed and used in other proceedings, where relevant, to demonstrate the fact of its existence and of this Settlement, including, but not limited to, Defendant Released Parties filing the Agreement and/or the Final Approval Order and Judgment in any other action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, waiver, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

## X.    MISCELLANEOUS

10.1    ***Mutual Non-Disparagement***.    Defendants, Defendants' Counsel, the Class Representatives, and Class Counsel shall make no statements, including statements to the press or any other public statements, that describe this Settlement, disparage any Party, or accuse any Party of any wrongdoing regarding this Settlement or the subject matter thereof.    Nothing in this Agreement shall be construed to prevent Plaintiff and Class Counsel from freely and frankly communicating with the Class Members in private.

10.2    ***Cooperation of Parties.***    The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, to seek Court approval, defend Court approval, and to do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.

10.3    ***Dispute Resolution.*** If a dispute arises regarding compliance with any of the provisions of an approved and executed Agreement, the dispute will be mediated by Judge John

Martin (ret.), who will make a non-binding recommendation to the Court regarding the dispute if such mediation efforts are unsuccessful.    Plaintiffs and Defendants shall each bear half the cost of any such mediation.    Any mediation costs paid by the Defendants shall be split evenly between each of the Alliant Defendants, the Catamaran Defendants, the National Union Defendants, and Virginia Surety.

10.4    *Entire Agreement*. This Agreement is the entire agreement between the Plaintiffs and/or Class Members, on the one hand, and the Defendants, on the other hand, and it supersedes any prior agreements, written or oral, between the Parties regarding the subject matter of this Settlement Agreement and General Release.    This Agreement cannot be altered, modified or amended except through a writing executed by all Parties.

10.5    *Construction of Agreement*. This Agreement shall be construed to effectuate the intent of the Parties to resolve all disputes encompassed by the Agreement.    All Parties have participated in the drafting of this Agreement, and any ambiguity shall not be resolved by virtue of a presumption in favor of any Party.    The Agreement was reached at arm's-length by the Parties represented by counsel.

10.6    *Executed in Counterparts*. This Agreement may be execute in counterparts, all of which shall be considered the same as if a single document had been executed, and shall become effective when such counterparts have been signed by each of the Parties and delivered to the other Party.    Counterpart copies of signature pages, whether delivered in original, by electronic mail in pdf format and/or by facsimile, taken together shall all be treated as originals and binding signatures.

10.7    *Notices*. Unless otherwise provided herein, any notice, request, instruction, application for Court approval, or application for Court Order sought in connection with the

Agreement, shall be in writing and delivered personally or sent by certified mail or overnight

delivery service, postage prepaid, with copies by facsimile or e-mail to the attention of Lead

Counsel or Defendants' Counsel (as well as to any other recipients that a court may specify).

Parties may change the person(s) to whom such notices should be directed by giving notice

pursuant to this paragraph. As of the date hereof, the respective representatives are as follows:

**For Plaintiffs:**

**Joseph "Jay" H. Aughtman**
Aughtman Law Firm, LLC.
1772 Platt Place
Montgomery, AL 36117
Telephone:    (334) 215-9873
Facsimile:    (334) 213-5663
                     jay@aughtmanlaw.com


**For the National Union Defendants:**

**Theodore R. Scarborough**
Sidley Austin LLP
One South Dearborn Street
Chicago, IL    60603
Telephone:    (312) 853-2236
Facsimile:    (312) 853-7036
tscarborough@sidley.com

**For the Catamaran Defendants:**

**Paul L. Langer**
Quarles & Brady LLP
300 N. LaSalle Street, Suite 4000
Chicago, IL 60654
Telephone:     (312) 715-5121
Facsimile:     (312) 632-1926
Paul.langer@quarles.com

**For Virginia Surety:**

**Neal R. Marder**
Akin Gump Strauss Hauer & Feld LLP
2029 Century Park East, Suite 2400

Los Angeles, California 90067-3010
Telephone:   (310) 229-1000
Facsimile:   (310) 229-1001
            nmarder@akingump.com

**For the Alliant Defendants:**

**Charles E. Raynal, IV**
Parker Poe Adams & Bernstein, LLP
301 Fayetteville Street, Suite 1400
Raleigh, NC 27601
Telephone:   (919) 835-4511
Facsimile:   (919) 834-4564
            charlesraynal@parkerpoe.com

10.8   ***Extensions of Time***. The Parties may agree, subject to the approval of the Court where required, to reasonable extensions of time to carry out the provisions of the Agreement.

10.9   ***Governing Law***. This Agreement shall be governed by and construed in accordance with the laws of New Jersey without giving effect to any conflict of law provisions that would cause the application of the laws of any jurisdiction other than New Jersey.

10.10   ***Fees and Expenses***. Except as otherwise expressly set forth herein, each Party hereto shall pay all fees, costs and expenses incurred by such Party in connection with the Actions, including fees, costs and expenses incident to its negotiation, preparation or compliance with this Agreement, and including any fees, expenses and disbursements of its counsel, accountants, and other advisors.   Nothing in this Agreement shall require Defendants to pay any monies other than as expressly provided herein.

10.11   ***Retention of Jurisdiction***. The Parties shall request that the Court retain jurisdiction of this matter after the Effective Date and enter such Orders as are necessary or appropriate to effectuate the terms of the Agreement.

**Agreed to on behalf of Plaintiffs and the Settlement Classes**

Dated: September 7, 2016                    By: _____
Joseph H. Aughtman
Aughtman Law Firm, LLC
1772 Platt Place
Montgomery, AL 36117
Telephone:   (334) 215-9873
Facsimile:    (334) 213-5663
jay@aughtmanlaw.com


**Agreed to on behalf of National Union Fire Insurance Company of Pittsburgh, Pa.**


Dated: July ___, 2016            By: _____
Theodore R. Scarborough
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603
Telephone:   (312) 853-2236
Facsimile:    (312) 853-7036
tscarborough@sidley.com

By: _____

An Officer of National Union Fire Insurance Company of Pittsburgh, Pa.

and

By: _____

An Officer of National Union Fire Insurance Company of Pittsburgh, Pa.

**Agreed to on behalf of American International Group, Inc.**


Dated: July ___, 2016            By: _____
Theodore R. Scarborough
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603
Telephone:   (312) 853-2236
Facsimile:    (312) 853-7036

**Agreed to on behalf of Plaintiffs and the Settlement Classes**

Dated: July __, 2016                    By:_____

Joseph H. Aughtman
Aughtman Law Firm, LLC
1772 Platt Place
Montgomery, AL 36117
Telephone:   (334) 215-9873
Facsimile:   (334) 213-5663
jay@aughtmanlaw.com

Aaron C. Hemmings
Hemmings & Stevens, P.L.L.C.
P.O. Box 90698
Raleigh, NC 27675
Telephone:   (919) 277-0161
Facsimile:   (919) 277-0162
ahemmings@hemmingsandstevens.com

**Agreed to on behalf of National Union Fire Insurance Company of Pittsburgh, Pa.**

Dated: July __, 2016            By: _____

Theodore R. Scarborough
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603
Telephone:   (312) 853-2236
Facsimile:   (312) 853-7036
tscarborough@sidley.com

By: _____

An Officer of National Union Fire Insurance Company of Pittsburgh, Pa.

and

By: _____

An Officer of National Union Fire Insurance Company of Pittsburgh, Pa.

**Agreed to on behalf of American International Group, Inc.**

-37-

Dated: July ___, 2016                    By: _____
Theodore R. Scarborough
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603
Telephone:    (312) 853-2236
Facsimile:    (312) 853-7036
tscarborough@sidley.com

By: _____

An Officer of American International Group, Inc.

and

By: _____

An Officer of American International Group, Inc.

**Agreed to on behalf of Virginia Surety Company, Inc.**


Dated: July ___, 2016                    By: _____
Neal R. Marder
Akin Gump Strauss Hauer & Feld LLP
2029 Century Park East, Suite 2400
Los Angeles, California 90067-3010
Telephone:    (310) 728-3740
Facsimile:    (310) 229-1001
                 nmarder@akingump.com

Dated: ~~July~~ _September 6,_ 2016         By: _Theodore R. Scarborough / CMH_
Theodore R. Scarborough
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603
Telephone:    (312) 853-2236
Facsimile:     (312) 853-7036
tscarborough@sidley.com


By: _____

An Officer of American International Group, Inc.

and

By: _____

An Officer of American International Group, Inc.

**Agreed to on behalf of Virginia Surety Company, Inc.**


Dated: July __, 2016         By: _____
**Neal R. Marder**
Akin Gump Strauss Hauer & Feld LLP
2029 Century Park East, Suite 2400
Los Angeles, California 90067-3010
Telephone:    (310) 728-3740
Facsimile:    (310) 229-1001
              nmarder@akingump.com

Dated: July ___, 2016                    By: _____

Theodore R. Scarborough
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603
Telephone:   (312) 853-2236
Facsimile:    (312) 853-7036
tscarborough@sidley.com

By: _____

An Officer of American International Group, Inc.

and

By: _____

An Officer of American International Group, Inc.

**Agreed to on behalf of Virginia Surety Company, Inc.**

September 2,
Dated: ~~July~~ ___, 2016                By: _____

**Neal R. Marder**
Akin Gump Strauss Hauer & Feld LLP
2029 Century Park East, Suite 2400
Los Angeles, California 90067-3010
Telephone:   (310) 728-3740
Facsimile:    (310) 229-1001
                        nmarder@akingump.com

Dated: July __, 2016            By: _____
Theodore R. Scarborough
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603
Telephone:   (312) 853-2236
Facsimile:    (312) 853-7036
tscarborough@sidley.com

By: _____

An Officer of American International Group, Inc.

and

By: _____

An Officer of American International Group, Inc.

**Agreed to on behalf of Virginia Surety Company, Inc.**

Dated: July __, 2016            By: _____
Neal R. Marder                        JUSTIN THOMAS, UP
Akin Gump Strauss Hauer & Feld LLP    Virginia Surety Co., Inc.
2029 Century Park East, Suite 2400
Los Angeles, California 90067-3010
Telephone:   (310) 728-3740
Facsimile:   (310) 229-1001
            nmarder@akingump.com

**Agreed to on behalf of the Catamaran Defendants**

Dated: July __, 2016                 By: _____
Paul L. Langer
Quarles & Brady, LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone:   (312) 715-5121
Paul.langer@quarles.com

By: _____, CL O f EVP

An Officer of Catamaran Health Solutions LLC.


**Agreed to on behalf of the Alliant Defendants**

Dated: July __, 2016                 By: _____
Charles E. Raynal, IV
Parker Poe Adams & Bernstein, LLP
P.O. Box 389
Raleigh, NC 27602-0389
Telephone:   (919) 834-4564
charlesraynal@parkerpoe.com


_____
Thomas and Kim Broome                 Dated: _____


_____
Jeffrey and Kimberly Bush             Dated: _____


_____
Rita Campbell                         Dated: _____


_____                Dated: _____

-39-

**Agreed to on behalf of the Catamaran Defendants**

Dated: July __, 2016                    By: _____
Paul L. Langer
Quarles & Brady, LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone:   (312) 715-5121
Paul.langer@quarles.com


By: _____

An Officer of Catamaran Health Solutions LLC.


**Agreed to on behalf of the Alliant Defendants**

Dated: July __, 2016                    By: _____
Charles E. Raynal, IV
Parker Poe Adams & Bernstein, LLP
P.O. Box 389
Raleigh, NC 27602-0389
Telephone:   (919) 834-4564
charlesraynal@parkerpoe.com


_____              Dated: _8/29/16_
Thomas and Kim Broome


_____              Dated: _____
Jeffrey and Kimberly Bush


_____              Dated: _____
Rita Campbell


_____              Dated: _____
Ajay Das


-39-

**Agreed to on behalf of the Catamaran Defendants**

Dated: July __, 2016                By: _____
Paul L. Langer
Quarles & Brady, LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone:   (312) 715-5121
Paul.langer@quarles.com


By: _____

An Officer of Catamaran Health Solutions LLC.


**Agreed to on behalf of the Alliant Defendants**

Dated: July __, 2016                By: _____
Charles E. Raynal, IV
Parker Poe Adams & Bernstein, LLP
P.O. Box 389
Raleigh, NC 27602-0389
Telephone:   (919) 834-4564
charlesraynal@parkerpoe.com


_____                Dated: _____
Thomas and Kim Broome

_____                Dated: 8/31/16
Jeffrey and Kimberly Bush


_____                Dated: _____
Rita Campbell


_____                Dated: _____
Ajay Das

-39-

**Agreed to on behalf of the Catamaran Defendants**

Dated: July __, 2016                    By: _____
Paul L. Langer
Quarles & Brady, LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone:   (312) 715-5121
Paul.langer@quarles.com


By: _____

An Officer of Catamaran Health Solutions LLC.


**Agreed to on behalf of the Alliant Defendants**

Dated: July __, 2016                    By: _____
Charles E. Raynal, IV
Parker Poe Adams & Bernstein, LLP
P.O. Box 389
Raleigh, NC 27602-0389
Telephone:   (919) 834-4564
charlesraynal@parkerpoe.com


_____                Dated: _____
Thomas and Kim Broome


_____                Dated: _____
Jeffrey and Kimberly Bush


*Rita Campbell*                         Dated:   8/23/2016
_____
Rita Campbell


_____                Dated: _____
Ajay Das


-39-

**Agreed to on behalf of the Catamaran Defendants**

Dated: July __, 2016          By: _____
Paul L. Langer
Quarles & Brady, LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone:   (312) 715-5121
Paul.langer@quarles.com


By: _____

An Officer of Catamaran Health Solutions LLC.

**Agreed to on behalf of the Alliant Defendants**

Dated: July __, 2016          By: _____
Charles E. Raynal, IV
Parker Poe Adams & Bernstein, LLP
P.O. Box 389
Raleigh, NC 27602-0389
Telephone:   (919) 834-4564
charlesraynal@parkerpoe.com


_____                    Dated: _____
Thomas and Kim Broome


_____                    Dated: _____
Jeffrey and Kimberly Bush


_____                    Dated: _____
Rita Campbell


_____                    Dated: _____
Ajay Das

-39-

_Manette DuBuisson_                          Dated: 8/31/2016

_Dagmar Durcik_                              Dated: _____

_Stephen Giercyk_                            Dated: _____

_Kenneth Graham_                             Dated: _____

_Christine Hine_                             Dated: _____

_James and Emma Imes_                        Dated: _____

_Deborah and Paul Johnson_                   Dated: _____

_Alice Lacks_                                Dated: _____

_Larry and Linda Lake_                       Dated: _____

_Jayantilal Patel_                           Dated: _____

_Mario Petruzzo_                             Dated: _____

-40-

Manette DuBuisson

Dagmar Durcik

Dated: _____

Dated: AUG. 29, 2016

Stephen Giercyk

Dated: _____

Kenneth Graham

Dated: _____

Christine Hine

Dated: _____

James and Emma Imes

Dated: _____

Deborah and Paul Johnson

Dated: _____

Alice Lacks

Dated: _____

Larry and Linda Lake

Dated: _____

Jayantilal Patel

Dated: _____

Mario Petruzzo

Dated: _____

_____                          Dated: _____
Manette DuBuisson


_____                          Dated: _____
Dagmar Durcik


_____                          Dated:  8-31-16
Stephen Giercyk


_____                          Dated: _____
Kenneth Graham


_____                          Dated: _____
Christine Hine


_____                          Dated: _____
James and Emma Imes


_____                          Dated: _____
Deborah and Paul Johnson


_____                          Dated: _____
Alice Lacks


_____                          Dated: _____
Larry and Linda Lake


_____                          Dated: _____
Jayantilal Patel


_____                          Dated: _____
Mario Petruzzo

_____                    Dated: _____
Manette DuBuisson


_____                    Dated: _____
Dagmar Durcik


_____                    Dated: _____
Stephen Giercyk

_____                    Dated: 8 - 24 - 2016
Kenneth Graham


_____                    Dated: _____
Christine Hine


_____                    Dated: _____
James and Emma Imes


_____                    Dated: _____
Deborah and Paul Johnson


_____                    Dated: _____
Alice Lacks


_____                    Dated: _____
Larry and Linda Lake


_____                    Dated: _____
Jayantilal Patel


_____                    Dated: _____

_____  Dated: _____

Manette DuBuisson


_____  Dated: _____

Dagmar Durcik


_____  Dated: _____

Stephen Giercyk


_____  Dated: _____

Kenneth Graham


_____  Dated: 8/23/2016

Christine Hine


_____  Dated: _____

James and Emma Imes


_____  Dated: _____

Deborah and Paul Johnson


_____  Dated: _____

Alice Lacks


_____  Dated: _____

Larry and Linda Lake


_____  Dated: _____

Jayantilal Patel


_____  Dated: _____

Mario Petruzzo

_____         Dated: _____
Manette DuBuisson


_____         Dated: _____
Dagmar Durcik


_____         Dated: _____
Stephen Giercyk


_____         Dated: _____
Kenneth Graham


_____         Dated: _____
Christine Hine

_Emma Imes_
_James_
James and Emma Imes              Dated: 8-23-16


_____         Dated: _____
Deborah and Paul Johnson


_____         Dated: _____
Alice Lacks


_____         Dated: _____
Larry and Linda Lake


_____         Dated: _____
Jayantilal Patel


_____         Dated: _____
Mario Petruzzo

-40-

_____          Dated: _____
Manette DuBuisson

_____          Dated: _____
Dagmar Durcik

_____          Dated: _____
Stephen Giercyk

_____          Dated: _____
Kenneth Graham

_____          Dated: _____
Christine Hine

_____          Dated: _____
James and Emma Imes

*Deborah Johnson* (signature)          Dated: 8/24/16
Deborah and Paul Johnson                     8-24-16
*Paul Johnson* (signature)

_____          Dated: _____
Alice Lacks

_____          Dated: _____
Larry and Linda Lake

_____          Dated: _____
Jayantilal Patel

_____          Dated: _____
Mario Petruzzo

-40-

_____                          Dated: _____

Manette DuBuisson

_____                          Dated: _____

Dagmar Durcik

_____                          Dated: _____

Stephen Giercyk

_____                          Dated: _____

Kenneth Graham

_____                          Dated: _____

Christine Hine

_____                          Dated: _____

James and Emma Imes

_____                          Dated: _____

Deborah and Paul Johnson

_Alice Lacks_                                     Dated: 8/30/16

Alice Lacks

_____                          Dated: _____

Larry and Linda Lake

_____                          Dated: _____

Jayantilal Patel

_____                          Dated: _____

Mario Petruzzo

_____  Dated: _____

Manette DuBuisson

_____  Dated: _____

Dagmar Durcik

_____  Dated: _____

Stephen Giercyk

_____  Dated: _____

Kenneth Graham

_____  Dated: _____

Christine Hine

_____  Dated: _____

James and Emma Imes

_____  Dated: _____

Deborah and Paul Johnson

_____  Dated: _____

Alice Lacks

_____  Dated: _August 23, 2016_

Larry and Linda Lake

_____  Dated: _____

Jayantilal Patel

_____  Dated: _____

Mario Petruzzo

-40-

_____                    Dated: _____
Manette DuBuisson

_____                    Dated: _____
Dagmar Durcik

_____                    Dated: _____
Stephen Giercyk

_____                    Dated: _____
Kenneth Graham

_____                    Dated: _____
Christine Hine

_____                    Dated: _____
James and Emma Imes

_____                    Dated: _____
Deborah and Paul Johnson

_____                    Dated: _____
Alice Lacks

_____                    Dated: _____
Larry and Linda Lake

_____                    Dated: 8|26|2016
Jayantilal Patel

_____                    Dated: _____
Mario Petruzzo

-40-

_____

Manette DuBuisson

Dated: _____

_____

Dagmar Durcik

Dated: _____

_____

Stephen Giercyk

Dated: _____

_____

Kenneth Graham

Dated: _____

_____

Christine Hine

Dated: _____

_____

James and Emma Imes

Dated: _____

_____

Deborah and Paul Johnson

Dated: _____

_____

Alice Lacks

Dated: _____

_____

Larry and Linda Lake

Dated: _____

_____

Jayantilal Patel

Dated: _____

_____

Mario Petruzzo

Dated: Aug. 23-2016

_Virginia Riker_
Virginia Riker

Dated: _8-24-16_

_____
Sharen Smith

Dated: _____

_____
Arie Waiserman

Dated: _____

_____
Danny and Tracy Walker

Dated: _____

_____
Robert and Maria Watson

Dated: _____

_____
Ralph Williams

Dated: _____

-41-

_____                    Dated: _____
Virginia Riker

*Sharen Smith*                                  Dated: 8·25·16
Sharen Smith


_____                    Dated: _____
Arie Waiserman


_____                    Dated: _____
Danny and Tracy Walker


_____                    Dated: _____
Robert and Maria Watson


_____                    Dated: _____
Ralph Williams

_____

Virginia Riker

Dated: _____

_____

Sharen Smith

Dated: _____

_____

Arie Waiserman

Dated: _____

_____

Danny and Tracy Walker

Dated: _____

_____

Robert and Maria Watson

Dated: _____

_____

Ralph Williams

Dated: _____

_____                    Dated: _____

Virginia Riker

_____                    Dated: _____

Sharen Smith

_____                    Dated: _____

Arie Waiserman

_____                    Dated: 8/28/16

Danny and Tracy Walker

_____                    Dated: _____

Robert and Maria Watson

_____                    Dated: _____

Ralph Williams

Virginia Riker
_____

Dated: _____


Sharen Smith
_____

Dated: _____


Arie Waiserman
_____

Dated: _____


Danny and Tracy Walker
_____

Dated: 8·26·16


Robert and Maria Watson
_____

Dated: _____


Ralph Williams
_____

Dated: _____

_____                                 Dated: _____
Virginia Riker


_____                                 Dated: _____
Sharen Smith


_____                                 Dated: _____
Arie Waiserman


_____                                 Dated: _____
Danny and Tracy Walker


_____                                 Dated: 08/26/2016
Robert and Maria Watson


_____                                 Dated: _____
Ralph Williams


-41-

_____                    Dated: _____

Virginia Riker

_____                    Dated: _____

Sharen Smith

_____                    Dated: _____

Arie Waiserman

_____                    Dated: _____

Danny and Tracy Walker

_____                    Dated: _____

Robert and Maria Watson

_____                    Dated: _August 23, 2016_

Ralph Williams

Agreed to on behalf of Alliant Insurance
Services, Inc., Alliant Services Houston, Inc.,
and Alliant Insurance Services Houston, LLC


By: _____       Dated: 8/25/16
Kenneth A. Zak, Esq.
General Counsel and Senior Vice President
for Alliant Insurance Services, Inc.
701 B Street, 6th Floor
San Diego, CA 92101
Telephone: (619) 849-3826
kzak@alliant.com


By: _____       Dated: 9-2-16
Charles E. Raynal, IV, Esq.
Parker Poe Adams & Bernstein LLP
Counsel to Alliant Defendants
P.O. Box 389
Raleigh, NC 27602-0389
Telephone: (919) 828-0564
charlesraynal@parkerpoe.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| Stephen Giercyk, Ajay Das and James and Emma Immes, on behalf of themselves and all other similarly situated, | : : : : | |
| Plaintiffs, | : : | |
| v. | : : | |
| National Union fire Insurance Company of Pittsburgh, PA, d/b/a National Union Fire Insurance Company, a division of American International Group, Inc. (AIG), Healthextras, Inc., Healthextras Benefits Administrators, Inc., Catamaran Health Solutions, LLC f/k/a Catalyst Health Solutions, Inc., Healthextras Insurance Agency, Inc., American International Group, Inc., d/b/a Group Insurance Trust, for the account of Healthextras, Alliant Insurance Services, Inc., f/k/a Driver Alliant Insurance Services, Inc., Alliant Services Houston, Inc., f/k/a JLT Services Corporation, and Alliant Insurance, Services Houston, LLC, f/k/a Capital Risk, LLC and f/k/a Jardine Lloyd Thompson, LLC, Healthextras, LLC and Virginia Surety Company, Inc. | : : : : : : : : : : : : : : : : : : : | Civil Action No: 2:13-cv-6272-FSH-MAH<br><br>CLASS ACTION |
| Defendants. | : | |

**<u>SETTLEMENT BAR ORDER</u>**

The Parties having entered into a Settlement Agreement and General Release, dated September 8, 2016[1] with respect to the Actions providing, *inter alia*, that in connection with Plaintiffs' motion for preliminary and final approval of the Settlement, the Parties shall contemporaneously move the Court for entry of a settlement bar order; and

---

[1] Capitalized terms used herein are intended to have the same meanings assigned to them in the Settlement Agreement.  For ease of reference, certain of these meanings are restated herein.

This matter having come before the Court on the Parties' joint request for entry of a settlement bar order; and

The Court having considered the submissions in support of the motion and the arguments of counsel; and

For good cause shown,

**IT IS HEREBY ORDERED THAT** the motion is granted:  Any Non-Settling Party,[2] including but not limited to Federal Insurance Company, J.C. Penny Life Insurance Company, J.C. Penny Direct Marketing Services, Inc., and Stonebridge Life Insurance Company, is hereby permanently barred, enjoined and restrained from commencing, prosecuting, or asserting any Contribution Claim[3] against the Defendant Released Parties,[4] or any of them.   In addition, any

---

[2] "Non-Settling Party" shall mean any person or entity not included in the "Defendant Released Parties."

[3] "Contribution Claim" shall mean and include any claim for subrogation, contribution or indemnification (whether equitable, contractual or otherwise) arising out of or relating to the Benefits Programs (including, but not limited to (i) the marketing, pricing, termination, administration, regulation, approval, or licensing of the Benefits Programs and/or the payment or nonpayment of any claims submitted thereunder; (ii) the insurance provided in connection with the Benefits Programs, including but not limited to its regulatory compliance, enforceability, administration, scope of coverage, premiums, or loss ratios; (iii) any other obligations owed to any Class Member as a direct or indirect result of the Class Member's enrollment in the Benefits Programs and/or any benefit provided to any Class Member as a result of their enrollment in the Benefits Programs); or (iv) the Actions or the claims asserted therein, as well as any claim, however denominated and regardless of the allegations, facts, law, theories, or principles on which it is based, in connection with which the injury the Non-Settling Party alleges having suffered includes the Non-Settling's actual or threatened liability to the Class Members, or any of them, or any amounts paid as judgment or in settlement of such actual or threatened liability, or any other costs or expenses (including necessary attorneys' fees) incurred in connection with claims threatened or asserted by Class Members.

[4] "Defendant Released Parties" shall mean each of (i) National Union Fire Insurance Company of Pittsburgh, Pa., American International Group, Inc., AIG Group Insurance Trust, and/or AIG Group Insurance Trust, For the Account of HealthExtras and their respective present, former, and future direct and indirect affiliates, agents, divisions, predecessors, parent companies, subsidiaries, members, and successors; (ii) Catamaran Health Solutions, LLC, HealthExtras, Inc., Catalyst Health Solutions, Inc., HealthExtras Benefit Administrators, Inc. and/or HealthExtras Insurance

such Contribution Claim that now exists or has accrued or in the future may exist or accrue is extinguished, discharged, satisfied, and/or otherwise unenforceable.

Nothing herein is intended to modify or restrict in any way the Judgment Reduction provisions contained in the Settlement Agreement.


**IT IS SO ORDERED. this ___ day of _____, 2016.**

**BY THE COURT:**


_____

**J.**

---

Agency, Inc. and their respective present, former, and future direct and indirect affiliates, agents, divisions, predecessors, parent companies, subsidiaries, members, and successors; (iii) Virginia Surety Company, Inc. and its present, former, and future direct and indirect affiliates, agents, divisions, predecessors, parent companies, subsidiaries, members, and successors; (iv) Alliant Insurance Services, Inc., Alliant Services Houston, Inc., and/or Alliant Insurance Services Houston, LLC and their respective present, former, and future direct and indirect affiliates, agents, divisions, predecessors, parent companies, subsidiaries, members, and successors, as well as JLT Insurance Services Corporation, JLT Services Corporation, Jardine Lloyd Thompson, LLC, Driver Alliant Insurance Services, Inc. and Capital Risk, LLC; (v) HealthExtras, LLC and its present, former, and future direct and indirect affiliates, agents, divisions, predecessors, parent companies, subsidiaries, members, and successors; (vi) any financial institution through which the Benefits Programs were marketed together with their present, former, and future direct and indirect affiliates, agents, divisions, predecessors, parent companies, subsidiaries, members, and successors; and (vii) all of the aforementioneds' respective present, former, and future agents, assigns, attorneys, directors, employees, officers, members and shareholders.

# EXHIBIT B

Settlement
c/o Heffler Claims Group
P.O. Box XXXXX
Philadelphia, PA 19102-XXXX

**POSTAGE**

**If you were a member of an insurance plan that was endorsed by Christopher Reeve, and included disability, accident, sickness, or travel insurance, and was sometimes offered as the HealthExtras Catastrophic Accidental Disability Program, the HealthExtras Benefits Program, the American Express Accident Disability Plan, the Catastrophic Accident Plan, or the Accident Protection Plan, a class action settlement may affect you.**

First Name Last Name
Address
Address 2
City, ST ZIP

[Barcode Area]

A proposed a nationwide class settlement has been reached in *Giercyk v. National Union Fire Insurance Company of Pittsburgh, PA et al.*, Case No. 2:13-cv-06272-FSH-MAH. The settlement resolves all claims involving the sale or underwriting of allegedly invalid or illegal insurance covering members of certain benefits programs (the "Benefits Programs"), including (1) the "HealthExtras Catastrophic Accidental Disability Program," the "HealthExtras Benefits Program," the "American Express Accident Disability Plan," the "Catastrophic Accident Plan," and the "Accident Protection Plan," as well as (2) any benefits program or memberships offering any type of disability, dismemberment, casualty, emergency accident and sickness medical expense benefit, or travel insurance marketed or administered by HealthExtras, J.C. Penny Life Insurance Company, Stonebridge Life Insurance Company, or American Express Travel Related Services Company, Inc., among other financial institutions, or (3) that used the trade name "HealthExtras," including any such program endorsed by Christopher Reeve, provided, however, that "Benefits Program" does not include benefits programs or memberships received as an employee of HealthExtras, Inc. or Catalyst Health Solutions, Inc.

The defendants involved in the settlement are: HealthExtras, Inc., HealthExtras, LLC, Catalyst Health Solutions, Inc., HealthExtras Insurance Agency, Inc., Catamaran Health Solutions, LLC, National Union Fire Insurance Company of Pittsburgh, Pa., American International Group, Inc., AIG Group Insurance Trust, Virginia Surety Company, Inc., Alliant Insurance Services, Inc., Alliant Insurance Services Houston, LLC, and Alliant Services Houston, Inc. ("Defendants"). Plaintiffs claim that these Defendants (1) were responsible for selling and underwriting group insurance to consumers who allegedly were not members of a group eligible under state law to receive such insurance; (2) falsely and deceptively advertised such insurance; and (3) collected excessive premiums or fees.

2

If you paid for memberships or received any benefits from any Benefits Programs at any point between 1999 and 2014, you may be a Class Member. The Defendants have agreed provide a settlement fund of $15 million, which, after deduction of attorneys' fees not to exceed $5 million, expenses, administration costs, and case contribution awards to certain named plaintiffs not to exceed $85,000 total, will be divided between two groups, depending on which insurers underwrote a member's disability coverage—the "HealthExtras Settlement Class" and the "Stonebridge Settlement Class"—and then proportionately distributed to members of the separate settlement classes who submit valid and timely claims.

**To receive a payment,** you must complete and submit a Claim Form by [Month, Day, Year]. You can exclude yourself from this settlement by [Month Day Year] to give up a payment but keep your right to sue Defendants regarding these claims. You can also object to any part of the settlement by [Month Day Year] if you do not exclude yourself from the settlement. If you do nothing, you will not receive a payment, but you will be bound by the decision of the Court and will give up your rights to sue about these claims. Complete information on how to file a claim, exclude yourself, or object, is on the settlement website at _____.

The Court is scheduled to hold a Final Approval Hearing at _:00 _.m., on [Month, Day, Year], in the Courtroom _____ at 50 Walnut Street in Newark, New Jersey 07101, to consider whether the settlement is fair, reasonable, and adequate, any objections, and whether to approve the settlement. You may attend the hearing, but you do not have to. The Court may also decide to approve attorneys' fees, costs and case contribution awards. The motion for these expenses will be posted on the settlement website after it is filed. If the hearing is rescheduled, the new date and time will be available on the settlement website.

This is only a summary. For more information, visit the settlement website or call 1-xxx-xxx-xxxx. Please do not contact the Court.

# EXHIBIT C

### Notice of Proposed Class Action Settlement Agreement

*Giercyk v. National Union Fire Insurance Company of Pittsburgh, PA et al.*

In the United States District Court District of New Jersey

Case No. 2:13-cv-06272-FSH-MAH

**READ THIS NOTICE CAREFULLY**
**YOUR LEGAL RIGHTS MAY BE AFFECTED**

This is **NOT** a solicitation from a lawyer.  A federal court authorized this Notice.

**If you were a member of an insurance plan that was endorsed by Christopher Reeve, and included disability, accident, sickness, or travel insurance, and was sometimes offered as the HealthExtras Catastrophic Accidental Disability Program, the HealthExtras Benefits program, the American Express Accidental Disability Plan, the Catastrophic Accident Plan, or the Accident Protection Plan, a class action settlement may affect you.**

## SUMMARY

- In the class action lawsuit referenced above, certain Plaintiffs sued the entities identified as "Defendants" in #2 below, claiming that at various times from 1999 through 2014, each was involved in the sale or underwriting of allegedly invalid or illegal disability, dismemberment, casualty, emergency accident and sickness medical expense benefit, or travel insurance coverage.

- Plaintiffs sued on behalf of all people that paid for such insurance coverage by enrolling in any of various "Benefits Programs," as defined in #5 below.

- Defendants have denied all of Plaintiffs' allegations and any other wrongdoing.

- After years of litigation, the Parties have agreed to settle the class action for $15,000,000 (the "Settlement Fund"), which, after deduction of attorneys' fees, expenses, administration costs, and case contribution awards, will be divided between two groups, depending on which insurers underwrote the policies providing a class member's disability coverage—the "HealthExtras Settlement Class" and the "Stonebridge Settlement Class"—and then proportionately distributed to members of the separate Settlement Classes who submit valid and timely claims.

- If you paid for memberships or received any benefits from any Benefits Program at any point from 1999 through 2014, you may be a class member. Under the terms of the Settlement Agreement, you are entitled to receive a cash payment if you submit a valid claim form, in exchange for releasing all claims against the Defendants and certain other entities arising out of or relating to the Benefits Programs.

- The Court in charge of this case has not decided whether to finally approve the settlement; however, the Court has preliminarily approved the settlement as fair, adequate and reasonable.  Payments will take place if the Court approves the settlement and after any appeals are resolved.

2

## YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT

| | |
|---|---|
| **Participate in the Settlement** | If you wish to receive money from the Settlement Fund, you **must** file a claim form by _____.   You can file the claim form on-line at _____. |
| **Exclude Yourself from the Settlement** | If you do not want to receive money from the Settlement Fund, but you want to keep your rights to sue Defendants separately, you **must** send a letter requesting exclusion postmarked no later than _____. |
| **Object to the Settlement** | If you wish to object to the Settlement, you must file a written objection with the Court, and mail copies to Class Counsel and Defendants' Counsel stating your objections.  Your letter to the Court must be received no later than _____. |
| **Participate in a Hearing** | You may appear in court and be heard at the time of the final approval hearing.  If you submit a timely objection to the Settlement, you must also indicate in the objection that you wish to appear in court and be heard at the time of the final fairness hearing. |
| **Do Nothing** | If you do nothing with respect to this Notice, **you will not receive a payment from the Settlement Fund but you will still be bound by the terms of the Settlement**, including the release of claims described below. |

**These rights and options, including the deadlines by which to exercise them, are explained in this Notice below.**

## WHAT THIS NOTICE CONTAINS

**Basic Information**......................................................................................................................**X**

      1.     What is this lawsuit about?

      2.     What businesses are involved in this Settlement?

      3.     Why is this a class action?

      4.     Defendants deny wrongdoing.

**Who Is In The Settlement Class?** ..............................................................................................**X**

      5.     How do I know if I am a Class Member?

**The Settlement Benefits – What You Get If You Qualify** ...........................................................**X**

      6.     What does the Settlement Provide?

**How To Get A Payment – Submitting a Claim Form**..................................................................**X**

      7.     How do I file a claim?

      8.     How much is my payment going to be?

      9.     When will I get my payment?

     10.    What am I giving up to get a payment?

**Release of Claims** ....................................................................................................................**X**

     11.    What claims am I giving up?

**Excluding Yourself From The Settlement** .................................................................................**X**

     12.    How do I exclude myself from this Settlement?

     13.    If I do not exclude myself, can I still sue the Defendants?

     14.    If I exclude myself, can I still get a payment?

**Objecting to the Settlement**.....................................................................................................**X**

     15.    What if I do not agree with the terms of the Settlement?

     16.    What is the difference between Objecting and Excluding?

**The Lawyers Representing You** ...............................................................................................**X**

     17.    Do I need to get a lawyer?

     18.    How will the lawyers be paid?

     19.    When will the Court decide whether to approve this settlement?

     20.    Do I have to attend the Hearing?

**If You Do Nothing**...................................................................................................................**X**

     21.    What happens if I do nothing?

**Getting More Information** .......................................................................................................**X**

     22.    How do I get more information?

QUESTIONS? CALL 1-xxx-xxx-xxxx OR VISIT WWW._____.COM

## BASIC INFORMATION

### 1.      What is this about?

A Court authorized this Notice because you have a right to know about a proposed Settlement in the lawsuit known as *Giercyk v. National Union Fire Insurance Company of Pittsburgh, PA et al.*, Case No. 2:13-cv-06272-FSH-MAH, which is pending in the United States District Court for the District of New Jersey.

Plaintiffs, Stephen Giercyk, Ajay Das and James and Emma Imes filed the lawsuit on behalf of themselves and as representatives of a class of individuals (the "Class") who paid for or received any benefits or memberships from or relating to any Benefits Programs.  Plaintiffs claim that the Defendants identified below (1) were responsible for selling and underwriting group insurance to consumers who allegedly were not members of a group eligible under state law to receive such insurance; (2) falsely and deceptively advertised such insurance; and (3) collected excessive premiums or fees.  Plaintiffs sought to recover damages and/or refunds from the Defendants, asserting claims for violations of state consumer protection statutes, breach of contract, the breach of good faith and fair dealing, unjust enrichment, conversion, civil conspiracy, punitive damages, and injunctive relief.

The lawsuit is related to several other lawsuits filed in other state and federal courts by the same lawyers ("Class Counsel") that represent Plaintiffs.  Like Plaintiffs, the class representatives ("Class Representatives") in these related lawsuits allege virtually identical facts and claims against the Defendants, among others.  Such related lawsuits include *Petruzzo v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 5:12-cv-113-FL (E.D.N.C.); *Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 1:14-cv-00892-RC (D.D.C.); *Gonzales v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 15-cv-02259 (S.D.N.Y.); *Graham v. Catamaran Health Solutions*, No. 4:14-cv-589 (E.D. Ark.), on appeal No. 16-1161 (8th Cir.); *Johnson v. Catamaran Health Solutions, LLC*, No. 15-cv-61752-RNS (S.D. Fla.), on appeal No. 16-11735 (11th Cir.); *Patel v. Catamaran Health Solutions, LLC*, No. 15-cv-61891-BB (S.D. Fla.), on appeal No. 16-10613 (11th Cir.); *Smith v. Catamaran Health Solutions LLC*, No. 3:15-cv-02846 (D.S.C.); *Waiserman v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 2:14-cv-667 (C.D. Cal.), on appeal No. 14-56813 (9th Cir.); *Watson v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 2:14-cv-01312 (E.D. La.); *Williams v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 1:14-cv-00309-MHS (N.D. Ga.), on appeal No. 16-11302 (11th Cir.); *Williams v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 6:14-cv-00870-MGL (D.S.C.); *Riefer v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 1:14-cv-21958-KMM, *Riefer v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. CACE-14-016477 (Cir. Ct. Fla.); *Hine v. Catamaran Health Solutions, LLC*, No. BC 593510 (Super. Ct. Cal.); *Durcik v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 5:14-cv-1147-JRA (N.D. Ohio); *Broome v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 2:14-cv-156 (E.D. Tenn.); *Imes v. Catamaran Health Solutions, LLC*, No. 5:15-cv-101-FL (E.D.N.C.); *Walker v. Stonebridge Life Ins. Co.*, No. 3:13-cv-4189-B (N.D. Tex.) (collectively, including *Giercyk*, the "Actions").

**2.      What businesses are involved in this Settlement?**

The Defendants in the Actions are entities that Plaintiffs claim played some role at various times in the marketing, sale, or post-sale administration of the Benefits Programs and/or the underwriting of insurance coverage available to members of the Benefits Programs: HealthExtras, Inc., HealthExtras, LLC, Catalyst Health Solutions, Inc., HealthExtras Insurance Agency, Inc., Catamaran Health Solutions, LLC, National Union Fire Insurance Company of Pittsburgh, Pa., American International Group, Inc., AIG Group Insurance Trust, Virginia Surety Company, Inc., Alliant Insurance Services, Inc., Alliant Insurance Services Houston, LLC, and Alliant Services Houston, Inc. (collectively known as "Defendants").  All of these entities are involved in the Settlement.

In addition, the Settlement involves other entities that Plaintiffs have alleged were involved with the Benefits Programs, including:  American Express Travel Related Services Company, Inc., Amex Insurance Services, AMEX Assurance Company, AMZ Marketing, Inc., Associated Credit Card Services, Inc., Cambria Productions, Inc., Capital One Bank, Capital One, F.S.B., Capital One Services Inc., Citibank (South Dakota), N.A., Chase Manhattan Automotive Finance Corporation, Chase Manhattan Bank, Chase Manhattan Bank USA, N.A., Christopher or Dana Reeve, Crestar Insurance Agency, Inc., CUNA Mutual Insurance Agency, Inc., First Tennessee Insurance Services, First Union Mortgage Corporation, First Virginia Banks, Inc., Fleet Credit Card Services, L.P., Fleet Bank (RI), National Association, Fleet Credit Card Services, L.P., Fleet Credit Card Holdings, Inc., FNC Insurance Agency, Globe Life and Accident Insurance Company, J.C. Penny Direct Marketing Services, Inc., KeyBank National Association, Keycorp Insurance Agency USA, Inc., Keycorp Insurance Agency, Inc., KeyBank National Association, Mass Marketing Insurance Group, Inc., North American Affinity Clubs, Inc., Onvia.com, Inc., Protective Consumer Direct, Quotesmith.com Inc., The Riggs National Bank of Washington, D.C., Reliance National Insurance Company, Sears Insurance Services, L.L.C., SunTrust Insurance Services (Georgia), Inc., Sun Trust Insurance Services (Tennessee), Inc., SunTrust Insurance Services (Florida), Inc., USA Service Group, U$A Value Exchange L.P., or U$A Value Exchange Partnership.

However, the Settlement does not include certain entities that Plaintiffs claim were involved in the Benefits Programs.  Stonebridge Life Insurance Company, Federal Insurance Company, J.C. Penny Life Insurance Company, J.C. Penny Direct Marketing Services, Inc., and Transamerica Financial Life Insurance Company are not parties to the Settlement and have not otherwise settled any claims with Plaintiffs.  As a result, certain of the Actions remain pending and will continue as to the claims Plaintiffs have made against these non-settling businesses.

**3.      Why is this a class action?**

In a class action, one or more people called "Class Representatives" (in this case, Stephen Giercyk, Ajay Das and James and Emma Imes, among others) sue on behalf of people who have similar claims.  All these people are a "Class Members" in a "Class."  One court resolves the issues for all Class Members, except for those who exclude themselves from the Class.

4.      **Defendants deny wrongdoing**

Defendants vigorously denied, and continue to deny, all of the allegations of wrongdoing in each of the Actions.  The Settlement is not an admission by Defendants of any fault, wrongdoing, or liability whatsoever.  Defendants instead agreed to the Settlement to eliminate the substantial burden, expenses and uncertainties of further litigation.

# WHO IS IN THE SETTLEMENT

To see if you are eligible for benefits from this Settlement, you first have to determine if you are a Class Member.

5.      **How do I know if I am a Class Member?**

You may be a Class Member if you paid for or received any benefits or memberships from or relating to any Benefits Programs.  "Benefits Programs" include (1) the "HealthExtras Catastrophic Accidental Disability Program," the "HealthExtras Benefits Program," the "American Express Accident Disability Plan," the "Catastrophic Accident Plan," and the "Accident Protection Plan," as well as (2) *any* benefits program or memberships offering any type of disability, dismemberment, casualty, emergency accident and sickness medical expense benefit, or travel insurance, marketed or administered by HealthExtras,  J.C. Penny Life Insurance Company, Stonebridge Life Insurance Company, or American Express Travel Related Services Company, Inc., among other financial institutions, or (3) that used the trade name "HealthExtras," including any such program endorsed by Christopher Reeve, provided, however, that "Benefits Program" does not include benefits programs or memberships received as an employee of HealthExtras, Inc. or Catalyst Health Solutions, Inc.

For purposes of the Settlement Agreement, Class Members are divided into two groups.  You are a member of the "HealthExtras Settlement Class" if you paid for or received any benefits or memberships from or relating to any Benefits Programs for which any insurance coverage was underwritten by the following insurance companies:  National Union Fire Insurance Company of Pittsburgh, Pa., Federal Insurance Company, Reliance National Insurance Company, Zurich American Insurance Company, or AMEX Assurance Company.  You are a member of the "Stonebridge Settlement Class" if you paid for or received any benefits or memberships from or relating to any Benefits Programs for which any insurance coverage was underwritten by J.C. Penny Life Insurance Company or Stonebridge Life Insurance Company.

If you are not sure whether you are included in the Class, you may call the Settlement Administrator, toll free at 1-800-000-0000 or visit _____.

**THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY**

6.      **What does the Settlement provide?**

The Defendants have agreed to provide a Settlement Fund of Fifteen Million Dollars ($15,000,000.00).  Each Eligible Class Member will be entitled to make a claim to be paid from the Settlement Fund.

Under the terms of the Settlement Agreement, Class Counsel intend to submit an Attorneys' Fee and Expense Application to the Court prior to Final Approval of the Settlement, and any amount awarded as fees or expenses by the Court shall be paid by the Settlement Administrator from the Settlement Fund.  Defendants have agreed not to oppose any application that does not exceed five million dollars ($5,000,000), plus costs and expenses.

On behalf of the Class Representatives, Class Counsel intends to seek Case Contribution Fees not to exceed the total amount of $85,000.00.  This amount will be shared among the Class Representatives, with each Class Representative who is a HealthExtras Settlement Class Member receiving up to $4,000 per Benefits Program account, and each Class Representative who is a Stonebridge Settlement Class Member receiving up to $2,500 per account.  The Case Contribution Fees will be paid on a per-account basis as opposed to per person, such that joint account holders split a single Case Contribution Fee.  Defendants have agreed not oppose Class Counsel's request for Case Contribution Fees up to these amounts, which shall be paid by the Settlement Administrator out of the Settlement Fund.

After payment of administrative expenses, taxes, and the court-awarded portion of Class Counsel's Fee and Expense Application and Case Contribution Fees, the remainder of the Settlement Fund (the "Distributable Settlement Fund") will be paid out to Class Members as follows:  Seventy-five percent of the Distributable Settlement Fund will be set aside for the HealthExtras Settlement Class.  Twenty-five percent of the Distributable Settlement Fund will be set aside for the Stonebridge Settlement Class.  The Distributable Settlement Fund allocated to the HealthExtras Settlement Class will then be paid to HealthExtras Settlement Class Members who timely submit valid claims on a proportionate basis, depending on how much each Member paid in membership fees for the Benefits Program in which he or she enrolled, with amounts paid prior to 2005 discounted by fifty percent.  The Distributable Settlement Fund allocated to the Stonebridge Settlement Class will also be paid to Stonebridge Settlement Class Members who timely submit valid claims on a proportionate basis, depending on how long each Member was enrolled in any Benefits Program, with payments based on the number of years enrolled.

## HOW TO GET A PAYMENT—SUBMITTING A CLAIM FORM

### 7.    How do I file a claim?

To ask for a payment, you must complete and timely submit a Claim Form.  If you have not received a Claim Form, you may request one by calling the Settlement Administrator at 1-800-000-0000 or visit the Settlement Website at www._____.com.  Please read the instructions carefully, fill out the Claim Form, and submit it online or mail it postmarked no later than [Month, Day, Year] to:

Settlement Address

P.O. Box 0000

City, State, Zip

### 8.    How much is my payment going to be?

After payment of administrative expenses, taxes, and the court-awarded portion of Class Attorney's Fee and Expense Application and Case Contribution Fees, the remainder of the Settlement Fund (the "Distributable Settlement Fund") will be paid out to Class Members who submit valid claim forms as set forth in #6 above.

As a result, the amount you are paid will depend on whether you are a member of the HealthExtras Settlement Class or the Stonebridge Settlement Class, how long you were enrolled in a Benefits Program, or, for members of the HealthExtras Settlement Class, how much you paid for your membership in the Benefits Programs, as well as the total number of valid claims submitted by members of your specific settlement class. Any monies that cannot be distributed for any reason shall be donated in equal shares to (a) the Buoniconti Fund to Cure Paralysis; (b) American Spinal Injury Association; (c) Paralyzed Veterans of America; and (d) Spinal Cord Opportunities for Rehabilitation Endowment pursuant to a *cy pres* award of the Court.

### 9. When will I get my payment?

The payments will be mailed to eligible Class Members who send in timely and valid Claim Forms, after the Court grants Final Approval of the Settlement, any appeals are resolved, and the claims administration process is completed. If the Court approves the Settlement after the Final Hearing on [Month, Day, Year], there may be appeals. It is always uncertain whether these appeals can be resolved, and resolving them can take time. Please be patient.

### 10. What am I giving up to get a payment?

Unless you exclude yourself from the proposed Settlement, you cannot sue, continue to sue, or be part of any other lawsuit against the Defendants (and the other involved businesses listed in section 2, above) regarding any of the legal issues involved in the Actions. If you remain a Class Member, you will give a "release" to the Defendants described in greater detail in section 11 below. In addition, if you remain a Class Member, all of the Court's orders will apply to you and legally bind you.

The Settlement Agreement, which is available at www._____, describes the exact legal claims that you give up if you do not exclude yourself from the Settlement.

## RELEASE OF CLAIMS

### 11. What claims am I giving up?

As part of the Settlement Agreement, the Class Representatives and all Class Members who do not exclude themselves from the Settlement agree to release the Defendants and all of their affiliates, as well as the other entities involved in the Settlement listed in # 2 above, from any and all rights, duties, claims, actions, or liabilities of any sort that arise out of or relate in any way to (i) allegations that were or could have been asserted in the Actions; (ii) the Benefits Programs, including, but not limited to the advertising, marketing, pricing, underwriting, termination, administration, regulation, approval, licensing, coverage, benefits, ownership, control, or group status of the Benefits Programs and/or the payment or nonpayment of any claims submitted under the Benefits Programs; (iii) the insurance provided in connection with the Benefits Programs, including but not limited to its regulatory compliance, enforceability, administration, scope of coverage, premiums, or loss ratios; or (iv) any other obligations owed by any Defendant to any Class Member as a direct or indirect result of the Class Member's enrollment in the Benefits Programs and/or any benefit provided to any Class Member as a result of their enrollment in the Benefits Programs.

The Class Representatives and Class Members who stay in the Class specifically do not release claims they may have against Stonebridge Life Insurance Company, Federal Insurance Company, or J.C. Penny Life Insurance Company. However, Class Representatives and all Class Members agree that if they obtain any recovery against any non-settling party (including

Stonebridge Life Insurance Company, Federal Insurance Company, or J.C. Penny Life Insurance Company) regarding the Benefits Programs or the claims asserted in the Actions, they shall voluntarily reduce any such recovery they obtain by the amount necessary to satisfy or otherwise prevent "Contribution Claims" that the non-settling party might assert against Defendants. "Contribution Claims" include any claim for subrogation, contribution or indemnification arising out of or relating to the Benefits Programs or the Actions, as well as any claim in connection with which the injury the non-settling party claims to have suffered includes the non-settling party's actual or threatened liability to Class Members, or any other costs or expenses (including necessary attorneys' fees) incurred in connection with claims threatened or asserted by Class Members.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want a payment from this Settlement, but you want to keep the right to individually sue the Defendants about the issues in this case, then you must take steps to exclude yourself from the Settlement. This is called "opting out" of the Settlement Classes.

### 12.     How do I exclude myself from this Settlement?

To exclude yourself from the Settlement, you must send a letter by mail saying that you want to be excluded from *Giercyk v. National Union Fire Insurance Company of Pittsburgh, PA et al.*, Case No. 2:13-cv-06272-FSH-MAH. You must include your full name, address, and your signature. You must also include a clear statement that you wish to be excluded from the Settlement Classes. You must mail your request for exclusion postmarked by [Month, Day, Year] to the address below. You cannot exclude yourself on the phone or by email.

Settlement Address

P.O. Box 0000

City, State, Zip

### 13.     If I do not exclude myself, can I still sue the Defendants?

No. Unless you exclude yourself, you give up any right to individually sue the Defendants (and the other businesses involved in the Settlement listed in section 2) for the claims that this Settlement resolves. You must exclude yourself from this Class to individually sue the Defendants over the claims resolved by this Settlement. The deadline to exclude yourself is [Month, Day, Year].

### 14.     If I exclude myself, can I still get a payment?

No. If you exclude yourself you will not get a payment from the Settlement Fund and you do not need to submit a Claim Form.

## OBJECTING TO THE SETTLEMENT

### 15.     What if I do not agree with the terms of the Settlement?

If you are a Class Member (and **have not excluded yourself**), you can object to the Settlement if you do not agree with its terms. You can give reasons why you think the Court should not approve the Settlement. You can also object to Class Counsel's Attorneys' Fee and Expense Application and/or the payment of Case Contribution Award to the Class Representatives.

To object to the Settlement, you must mail a letter to the Clerk of the Court, Class Counsel and Defendants' Counsel and include the following:

    (a)    The name of this Action (*Giercyk v. National Union Fire Insurance Company of Pittsburgh, PA et al.*, Case No. 2:13-cv-06272-FSH-MAH).

    (b)    Your full name, address and telephone number;

    (c)    An explanation of the basis upon which you claim to be a Class Member;

    (d)    All grounds for the objection, accompanied by any and all legal or factual support for the objection known to you or your counsel;

    (e)    The identity of all counsel who represent you, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement or fee application and all legal or factual support for such fees;

    (f)    The identity of all counsel representing you who will appear at the Final Approval Hearing (if any);

    (g)    A statement confirming whether you intend to personally appear and/or testify at the Final Approval Hearing; and

    (h)    Your signature (an attorney's signature shall not be deemed sufficient to satisfy this requirement).

## 16.    What is the difference between Objecting and Excluding?

Objecting is simply telling the Court that you do not like something about the Settlement.  You can object only if you stay in the Class.  If you object, and the Court approves the Settlement anyway, you will still be bound by the result.  Excluding yourself is telling the Court that you do not want to be part of the Class.  If you exclude yourself, you cannot object because the case no longer affects you.

**THE LAWYERS REPRESENTING YOU**

## 17.    Do I need to get a lawyer?

The Court has appointed (1) Joseph H. Aughtman, of Aughtman Law Firm, LLC in Montgomery Alabama, (2) Richard M. Golomb and Kenneth Grunfeld of Golomb & Honik, P.C. in Philadelphia, Pennsylvania and (3) Aaron Hemmings of Hemmings & Stevens, P.L.L.C of Raleigh, North Carolina to represent you and other Class Members as "Class Counsel."  You do not have to pay Class Counsel.  If you want to be represented by your own lawyer, and have that lawyer appear in court for you in this case, you may hire one at your own expense.

## 18.    How will the lawyers be paid?

Class Counsel intends to submit a Fee and Expense Application, seeking an award based on the value of the Settlement and the work performed in an amount not to exceed five million dollars ($5,000,000), plus expenses.  Defendants have agreed not oppose Class Counsel's Attorneys' Fee and Expense application up to this amount.  The motion for Fees and Expenses will be posted on the Settlement Website _____after it is filed.  The Court currently is scheduled to decide whether to approve the motion at the Final Approval Hearing.

## THE COURT'S SETTLEMENT FINAL APPROVAL HEARING

The Court will hold a hearing to decide whether to approve the Settlement. You may attend and you may ask to speak, but you do not have to.

**19.     When will the Court decide whether to approve this Settlement?**

The Court has scheduled a Final Approval Hearing at _:00 _.m., on [Month, Day, Year], in the Courtroom _____ at 50 Walnut Street in Newark, New Jersey 07101. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Judge may listen to people who have asked to speak about an objection. The Court may also decide to approve the Class Counsel's Fee and Expense Application and Case Contribution Award. During the hearing, the Court may decide whether to approve the Settlement. It is not known how long the hearing or any decision will take. If the hearing is rescheduled, the new date and time will be available on the settlement website.

**20.     Do I have to attend the Hearing?**

You may attend the Hearing if you wish, but you are not required to do so. Class Counsel will represent you and answer any questions the judge may have. If you filed a written objection, you or your lawyer acting on your behalf may attend the Final Approval Hearing and ask to speak at the Hearing, but you are not required to do so, and must state in your objection that you would like the opportunity to be heard. You may also pay your own lawyer to attend, but it is not necessary to do so, unless you choose to have a lawyer appear on your behalf to object to the Settlement.

## IF YOU DO NOTHING

**21.     What happens if I do nothing?**

If you do nothing, you will not receive a payment from the Settlement Fund. But, unless you exclude yourself, you will still be bound by the Settlement and you will not be able to individually sue the Defendants for the claims resolved in the Settlement. You will also be legally bound by all of the orders the Court issues and judgments the Court makes concerning the lawsuit.

## GETTING MORE INFORMATION

**22.     How do I get more information?**

This Notice summarizes the proposed Settlement. For more information, including copies of the Settlement Agreement, Claim Forms, and other legal documents, visit the settlement website at, call the Settlement Administrator at 1-xxx-xxx-xxxx, visit the settlement website at www._____com or write to:

Settlement Address

P.O. Box 0000

City, State, Zip

**Please do not contact the Court.**

# EXHIBIT D

Class Member ID: <<refnum Barcode>>

<<refnum>>

| MUST BE POSTMARKED NO LATER THAN _____, 2016 | **PROOF OF CLAIM FORM**<br>**RE:** *Giercyk v. HealthExtras, LLC et al.,*<br>2:13-cv-6272-FSH-MAH | For Office Use Only |

**I WISH TO RECEIVE A SHARE OF THE SETTLEMENT.**
**IMPORTANT: THIS CLAIM FORM MUST BE POSTMARKED ON OR BEFORE**
**_____, 2016 AND MAILED TO THE FOLLOWING ADDRESS:**

GIERCYK v. HEALTHEXTRAS LLC
C/O HEFFLER CLAIMS GROUP
1515 Market Street, Suite 1700
Philadelphia, PA 19102

CLAIMANT INFORMATION:
Class Member ID: <<RefNum>>
<<First Name>> <<Last Name>>
<<Address1>>
<<Address2>>
<<City>>, <<ST>> <<Zip>>-<<Zip 4>>

| **CORRECTIONS OR ADDITIONAL INFORMATION** |
| If different than the preprinted data to the left, please print your current address below: |
| Address |
| Address2 |
| City                          State      Zip Code |

Any change of name <u>must</u> be accompanied by legal documentation to support the name change.

For your claim form to be valid, your form must be signed, dated and submitted to the Settlement Administrator at the address listed above.

**SIGNATURE:** _____

**DATED:** ____ ____ / ____ ____ / ____ ____ ____ ____

Barcode                    Barcode                    Barcode

GIERCYK v. HEALTHEXTRAS LLC
C/O HEFFLER CLAIMS GROUP
1515 Market Street, Suite 1700
Philadelphia, PA 19102


<<RefNum Barcode>>
<<RefNum>>
<<First Name>> <<Last Name>>
<<Address 1>>
<<Address 2>>
<<City>>, <<ST>>  <<Zip>>-<<Zip 4>>

# EXHIBIT E

**If you were a member of an insurance plan that was endorsed by Christopher Reeve, and included disability, accident, sickness, or travel insurance, and was sometimes offered as the HealthExtras Catastrophic Accidental Disability Program, the HealthExtras Benefits Program, the American Express Accidental Disability Plan, the Catastrophic Accident Plan, or the Accident Protection Plan, a class action settlement may affect you.**

A proposed a nationwide class settlement has been reached in *Giercyk v. National Union Fire Insurance Company of Pittsburgh, PA et al.*, Case No. 2:13-cv-06272-FSH-MAH. The settlement resolves all claims involving the sale or underwriting of allegedly invalid or illegal insurance covering members of certain benefits programs (the "Benefits Programs"), including (1) the "HealthExtras Catastrophic Accidental Disability Program," the "HealthExtras Benefits Program," the "American Express Accident Disability Plan," the "Catastrophic Accident Plan," and the "Accident Protection Plan," as well as (2) any benefits program or memberships offering any type of disability, dismemberment, casualty, emergency accident and sickness medical expense benefit, or travel insurance, marketed or administered by HealthExtras, J.C. Penny Life Insurance Company, Stonebridge Life Insurance Company, or American Express Travel Related Services Company, Inc., among other financial institutions, or (3) that used the trade name "HealthExtras," including any such program endorsed by Christopher Reeve, provided, however, that "Benefits Program" does not include benefits programs or memberships received as an employee of HealthExtras, Inc. or Catalyst Health Solutions, Inc.

The defendants involved in the settlement are: HealthExtras, Inc., HealthExtras, LLC, Catalyst Health Solutions, Inc., HealthExtras Insurance Agency, Inc., Catamaran Health Solutions, LLC, National Union Fire Insurance Company of Pittsburgh, Pa., American International Group, Inc., AIG Group Insurance Trust, Virginia Surety Company, Inc., Alliant Insurance Services, Inc., Alliant Insurance Services Houston, LLC, and Alliant Services Houston, Inc. (collectively known as "Defendants"). Plaintiffs claim that these Defendants (1) were responsible for selling and underwriting group insurance to consumers who allegedly were not members of a group eligible under state law to receive such insurance; (2) falsely and deceptively advertised such insurance; and (3) collected excessive premiums or fees.

Defendants deny these allegations but have agreed to the settlement to avoid the burden, expenses and uncertainties of further litigation.

### Am I a Class Member?

You may be a Class Member if you paid for memberships or received any benefits from any Benefits Programs at any point between 1999 and 2014.

### What does the Settlement provide?

The Defendants have agreed to provide a settlement fund of $15 million, which after deduction of attorneys' fees not to exceed $5 million, expenses, administration costs, and case contribution awards to named plaintiffs not to exceed $85,000 total, will be divided between two groups, depending on which insurers underwrote a member's disability coverage—the "HealthExtras Settlement Class" and the "Stonebridge Settlement Class"—and then proportionately distributed to members of the separate settlement classes who submit valid and timely claims. In exchange, Class Members who do not exclude themselves from the settlement release Defendants and certain other entities from claims arising out of the Benefits Programs or any of the Plaintiffs'

2

allegations, and further agree to reduce any judgments or settlements with non-settling parties on claims arising out of the Benefits Programs or the Plaintiffs' allegations.

### What are my Options?

To receive a payment, you must complete and submit a Claim Form by [Month, Day, Year]. Claim forms and complete information are available at www._____.com.

You have the right to exclude yourself from the settlement. You will not get a payment, but will keep your right to sue Defendants regarding these claims.  If you do, you must mail your written request for exclusion to the Settlement Administrator postmarked by [Month, Day, Year]. You also have the right to stay in the settlement and object to any part that you do not agree with. If you do nothing, you will not receive a payment, but you will be bound by the decision of the Court and will give up your rights to sue about these claims.

For complete information on how to exclude yourself or object, visit www._____.com or call 1-XXX-XXX-XXXX.

The Court will hold a Final Approval Hearing at _:00 _.m., on [Month, Day, Year], in the Courtroom _____ at 50 Walnut Street in Newark, New Jersey 07101, to consider whether the settlement is fair, reasonable, and adequate, any objections, and whether to approve the settlement.  You may attend the hearing, but you do not have to. The Court may also decide to approve attorneys' fees, costs and case contribution awards. The motion for these expenses will be posted on the settlement website after they are file. If the hearing is rescheduled, the new date and time will be available on the settlement website.

This is only a summary.  For more information, visit www._____.com, call 1-xxx-xxx-xxxx, or write to: Settlement Address, P.O. Box 0000, City, State, Zip

Please do not contact the Court.